Steve **GUIA**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 05–06–00879–CR, 05–06–00880–CR.

Court of Appeals of Texas,
Dallas.

April 17, 2007.

W. Craig Barlow, Barlow & Associates, Richardson, for Appellee.

John R. Roach, Collin County Dist. Atty., Jeffrey Garon, Asst. Crim. Dist. Atty., McKinney, for State.

Before Justices MOSELEY, BRIDGES, and SMITH.[1]

## OPINION

Opinion by Justice BEA ANN SMITH (Retired).

In each of these appeals from jury convictions for delivery of cocaine, we must determine whether confirmatory testing of a *composite sample* of the delivered substances, which individually had presumptively tested positive for cocaine, provided legally and factually sufficient evidence to prove delivery of the requisite amount. We must also determine whether the evidence is legally and factually sufficient to support the jury's implicit rejection of defensive claims of duress and entrapment. Based on the record before us, we conclude the composite sampling in these cases provided legally and factually sufficient evidence to prove delivery of the requisite amount. We also conclude the evidence is legally and factually sufficient to support the rejection of the defensive claims. We modify the judgments to reflect the proper punishment range and delete recitations that the right of appeal was waived. As modified, we affirm the trial court's judgments.

### Background

Steve Guia was charged with two offenses of delivery of cocaine in an amount of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(a),(d) (Vernon 2003 & Supp.2006). The charges arose after Guia delivered two small bags containing a white powdery substance on two separate occasions to undercover police officer Kevin Lopez; both bags field-tested positive for cocaine.

The trial was short and consisted primarily of the testimony of Lopez and the State's chemist Chris Youngkin, a nine-year veteran in the Texas Department of Public Safety Crime Lab. Lopez testified he met Guia through a confidential informant who had informed the police department that Guia was selling cocaine from

1. The Honorable Bea Ann Smith, Justice, Court of Appeals, Third District of Texas at Austin, Retired, sitting by assignment.

his house. On September 1, 2005, the confidential informant and Lopez drove to Guia's house and found him standing outside. Guia approached them and when Lopez asked if Guia could sell him a quarter ounce of cocaine, Guia responded he could but they would have to go to another location. Guia asked Lopez to drive. Out of concern for the safety of the confidential informant, Lopez replied they had "something to do." Lopez and the confidential informant left, but after dropping off the confidential informant at a secure location, Lopez returned. Guia approached him again, got into Lopez's car, and directed Lopez to an apartment complex about five minutes away from Guia's house. When they arrived, Lopez gave Guia $350. Guia left and returned a few minutes later with $60 in change and a bag containing two smaller bags of "an off-white rock powder that appeared to be cocaine."[2] Lopez then drove Guia back to his house. Lopez testified that although Guia was "a bit nervous ... looking back and forth up the street ... making sure nobody was following," he responded favorably to Lopez's request for future purchases and told Lopez he could get "anything ... meth, ice ... kilos of cocaine."

Lopez returned to Guia's house for a second purchase six days later.[3] Again, Guia was standing outside his house and approached the car. Lopez asked Guia for half an ounce of cocaine and Guia respond-ed they would need to go to the same apartment complex to get it. Shortly after Guia got into Lopez's car, he told Lopez they would be going to a different location—a car wash. At the car wash, Lopez gave Guia another $350. After he left the car, Lopez lost sight of Guia. From his police surveillance team, Lopez learned that Guia had left the area. Lopez immediately returned to Guia's house and found him standing outside. Lopez confronted Guia who "was real nervous ... visibly shaken." Guia handed Lopez one small bag containing a white powdery substance. Because the bag appeared short, Lopez weighed it on a digital scale and found the bag indeed contained less than the half ounce he had requested. When Lopez asked Guia to give him more cocaine or some money back, Guia pulled from his pocket a second bag containing a white powder and handed Lopez $40 in change. Although Guia "left it so that Lopez could come back" to purchase more, Lopez testified that because Guia left the car wash and tried to "short change" him, no further transactions were attempted. On cross-examination, Lopez admitted Guia "had been targeted," but denied he had been "entrapped." To rebut Guia's entrapment theory, the State offered a pen packet showing that Guia had pleaded guilty to and been convicted of delivery of cocaine in 2002. The pen packet was admitted into evidence and published to the jury.[4]

---

**2.** This offense is appellate cause number 05–06–00880–CR.

**3.** This offense is appellate cause number 05–06–00879–CR.

**4.** The packet was admitted over Guia's objection under Texas Rule of Evidence 403 that the probative value of the conviction was outweighed by its prejudicial value and his objection under the "general rule that prior convictions are not admissible during guilt-innocence." The trial court specifically found the packet would rebut Guia's entrap-ment defense. See, e.g., England v. State, 887 S.W.2d 902, 913–14 (Tex.Crim.App.1994) (evidence of prior conviction is some evidence that subsequent crime was not result of entrapment). The trial court also found the packet would rebut Guia's opening statement that he "is not a drug dealer, that he is a drug user, and the State is trying to make him out to be a Miami Vice drug dealer." In accordance with its findings, the trial court included an instruction in its charge that this evidence was admitted for limited purposes. Because Guia does not complain of the

Youngkin, the State's chemist, testified he received as evidence the two bags Guia delivered to Lopez on September 1, as well as the two bags Guia delivered on September 7. To determine the amount of the substance delivered on September 1, Youngkin weighed the two bags and the substance together and also each bag individually. Youngkin then performed on the contents of each bag "some preliminary tests to [get] an idea of what things might be present." After the preliminary test indicated the presence of cocaine in each bag, Youngkin combined a sample of the substance in each bag and used the gas chromatograph mass spectrometer test to confirm "conclusively" that the composite sample was cocaine. Youngkin concluded the two bags delivered on September 1 contained a total of 4.06 grams of cocaine.

Youngkin repeated the same steps to determine the amount of the substance delivered on September 7 and concluded those two bags had a total weight of 4.19 grams. On cross-examination about his testing of a composite sample collected from the two bags, Youngkin agreed that the confirmatory test would have "conclusively" yielded a positive finding of cocaine even if only one of the two bags contained cocaine. He also agreed none of the two individual bags from either September 1 or September 7 weighed four grams or more. He disagreed, however, with the defense's hypothesis that it was possible that only one of the two bags delivered in each transaction contained cocaine. Youngkin testified the preliminary tests on each individual bag would not have yielded positive results for cocaine "had it not been there" and he had "no doubt" that the substance in all four bags contained cocaine.

Guia did not testify or call any witnesses at guilt-innocence, but through cross-examination and counsel's opening and closing statements urged he had been entrapped and had acted under duress when he sold the cocaine to Lopez on the second occasion.

Rejecting Guia's defensive theories, a jury found Guia guilty of both charges and assessed punishment in each case at forty years' confinement and a $1000 fine.

### Sufficiency of Evidence to Prove Delivery of Requisite Amount

■ In his first and second issues, Guia challenges the legal and factual sufficiency of the evidence to prove he delivered at least four grams of cocaine in each instance. Guia contends these are issues of first impression because the chemist's confirmatory testing in each instance of a composite sample of substance from each of the two bags delivered was "unorthodox."[5] In making this argument, Guia equates the composite testing conducted here with random sampling—the extrapolation of results of a tested sample to prove the whole is the same as the sample—and relies on the concurring opinion in *Gabriel v. State,* 900 S.W.2d 721, 722 (Tex.Crim.App.1995) (Clinton, J., concurring). In *Gabriel,* a plurality of the court of criminal appeals concluded that testing results on 2.237 grams of rock cocaine contained in five of fifty-four identically packaged baggies weighing in total 35.2 grams was legally sufficient to show Gabriel possessed cocaine in an amount greater than twenty-eight grams. *Id.* at

court's ruling on appeal, we express no opinion as to its propriety.

**5.** Guia notes that he has found no case law on whether composite sampling alone can provide sufficient evidence to prove the requisite amount of a delivered substance. Our research has yielded no case law either.

722 (plurality op.). In so concluding, the court noted that the chemist "scientifically tested" the rocks in three of the baggies, "spot tested" the contents of the other two, and visually inspected the remaining forty-nine baggies and found them and their contents to be virtually identical to the ones she had tested. *Id.* Concluding that the manner of testing—random sampling—went to the weight of the evidence, a plurality of the court held that "it was rational for the fact-finder to conclude that identically-packaged substances, which appear to be the same substance, are in fact the same substance." *Id.* In a concurring opinion, Judge Sam Clinton criticized the "simplistic" approach taken by the plurality. *Id.* at 722 (Clinton, J., concurring). Judge Clinton differentiated samples of a substance such as rock cocaine, which might have a distinctive physical appearance, from samples of a homogenous substance such as powder cocaine, because other legal substances may resemble the white powder. *Id.* at 726.

Seizing on the concurring opinion's expression of doubt about samples of white powdery substances, Guia argues that because the powdery contents of each individual bag in these two transactions weighed less than four grams, the composite testing was insufficient and Youngkin should have conclusively tested each individual bag for cocaine. Guia maintains that while conclusive testing on a random sample of items with *distinctive texture and appearance* is sufficient to prove the whole is the same as the sample when accompanied by testimony that the non-tested items visually resemble the tested ones,[6] random sampling of *powdery substances* contained in *separate receptacles* is not sufficient to prove the whole is the same as the sample unless the weight of the sample tested meets the requisite amount. Quoting Judge Clinton's concurring opinion, Guia notes that the likeness of controlled powdery substances to non-controlled powdery substances precludes imparting visual similarities to the non-tested portions. As such, Guia argues that when a seized substance is powdery, as in this case, the State must conclusively test a sufficient sample—all if necessary—to prove the requisite amount. *See id.* at 723–27 (Clinton, J., concurring).

■ We review a challenge to the legal sufficiency of the evidence to support a verdict of guilt by viewing the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense. *Wilson v. State,* 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). Under this standard, the fact-finder is the exclusive judge of the witnesses' credibility and the weight given to the evidence, may draw reasonable inferences from basic to ultimate facts, and is entitled to resolve any conflicts in testimony and reject or accept any or all of the evidence presented by either side. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996).

■ Under the standard of review for a challenge to the factual sufficiency of the evidence, we determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt by viewing the evidence in a neutral light. *See Watson v. State,* 204 S.W.3d 404, 415 (Tex.Crim.App. 2006); *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006). In conducting this review, we are permitted to substitute our judgment for the jury's on the question of witness credibility and weight of

---

6. *See, e.g., Melton v. State,* 120 S.W.3d 339, 342 (Tex.Crim.App.2003); *Zone v. State,* 118 S.W.3d 776, 776 (Tex.Crim.App.2003).

evidence determinations, "albeit to a very limited degree." *Marshall,* 210 S.W.3d at 625. We will reverse a verdict of guilty on a factual sufficiency challenge only when we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson,* 204 S.W.3d at 417.

■ Viewing the evidence here under the appropriate standards, we conclude the evidence is both legally and factually sufficient to show Guia delivered the requisite amount of cocaine on both occasions. In reaching this conclusion, we agree with Guia and the concurring opinion in *Gabriel* that, because of the likeness of powdery controlled substances to non-controlled substances, random sampling alone of powdery substances contained in separate receptacles is not sufficient to prove the whole is the same as each of the sample tested unless the weight of the random sample meets the requisite amount. However, we disagree with Guia that the composite testing here is equivalent to random sampling. Unlike random sampling where the testing occurs on *one or a few of several seized substances,* the confirmatory test Youngkin performed here was on a *composite sample containing substance from each of the two bags* Guia delivered on the two separate occasions. Although the substance in each bag was white, powdery, and non-distinct in nature, the contents of each bag had already presumptively tested positive for cocaine and there was expert testimony that this was some indication that cocaine was present. Moreover, while Youngkin agreed that the confirmatory test would have "conclusively" yielded a positive finding of cocaine if only one of the bags had cocaine, he testified that, based on the preliminary tests, he had "no doubt" each of the four bags contained cocaine.

The jury, as the fact-finder, was free to believe his testimony, determine what weight to give it, and draw any reasonable inferences in determining the nature of the substance in each bag. *See Jones,* 944 S.W.2d at 647. From the testimony of Youngkin, an experienced chemist, that he had no doubt the substance in each bag was cocaine, the evidence showing that the substance in each bag presumptively tested positive for cocaine and would not have if cocaine had not been present, and the evidence showing the composite sample of the substances conclusively tested positive for cocaine, the jury rationally could have found beyond a reasonable doubt that Guia delivered the requisite amount of cocaine on both occasions. *Cf. Manning v. State,* 637 S.W.2d 941 (Tex.Crim.App.1982) (concluding officer's belief, based on his experience and observation, that pink tablets were controlled substance insufficient to prove by preponderance of evidence substance was controlled substance; pills resembled other non-controlled substances and State should have offered greater description of the pills, introduced the pills into evidence, or provided chemical analysis) and *Steele v. State,* 681 S.W.2d 129 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd) (concluding evidence legally insufficient to prove beyond reasonable doubt substance delivered was cocaine where State failed to elicit testimony from chemist that substance was cocaine, instead relying exclusively on police officer's testimony that appellant referred to substance as cocaine). Although we note that the burden of testing each of the four bags appears to be minimal and question why Youngkin did not perform confirmatory tests on each bag, we will not substitute our judgment for that of the jury. We resolve Guia's first and second issues against him.

### Sufficiency of Evidence to Support Rejection of Entrapment Defense

■ In his third and fourth issues, Guia argues the evidence is legally and factually

insufficient in each case to support the jury's implicit rejection of his entrapment defense. In arguing these issues, Guia relies on Lopez's testimony that he "targeted" Guia, used a confidential informant, drove Guia to a different location each time to get the cocaine, gave Guia the money in advance, and determined the amount of cocaine each time. Guia maintains this evidence shows he was entrapped on each occasion and the jury erred in rejecting his defense. As further support that he was entrapped on the second occasion, Guia also relies on the evidence that he tried to "rip Lopez off." Guia argues this evidence shows an intent to rob, not to deliver contraband. Guia notes that he completed the second delivery only after Lopez, who was carrying three guns, confronted him. Guia insists that he turned the cocaine over this time out of fear and maintains this shows that he was entrapped. In response, the State argues that Guia was a "willing dealer" and the jury properly rejected his entrapment defense.

■■■ Entrapment is a defense to prosecution requiring the defendant to show that a law enforcement agent induced him to commit the crime by means—such as pleas based on extreme need, sympathy, or friendships—that would have caused an ordinarily law-abiding person of average resistance to commit the offense. *See* Tex. Pen.Code Ann. § 8.06(a) (Vernon 2003); *England v. State*, 887 S.W.2d 902, 913 (Tex.Crim.App.1994); *Flores v. State*, 84 S.W.3d 675, 682 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). In reviewing a challenge to the legal and factual sufficiency of the evidence to support a jury's rejection of a defense to prosecution, we use the same standards used in reviewing the sufficiency of the evidence to support a verdict of guilt, looking at the sufficiency of the evidence to support both the verdict

as well as the rejection of the defense. *Hernandez v. State*, 161 S.W.3d 491, 498–99 (Tex.Crim.App.2005) (legal sufficiency standard); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991) (same); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim.App.2003) (factual sufficiency standard).

Viewing the evidence here under the appropriate standards, we conclude the jury could have found that Guia was a "willing dealer." The record reflects that Guia approached Lopez both times when Lopez drove up to his house, assured Lopez he could deliver the requested amount, directed Lopez to the locations where the cocaine was stored, delivered the cocaine and some change to Lopez, and offered to sell him more. While Lopez may have provided Guia the opportunity to commit the offenses by driving to Guia's house and asking if he could purchase cocaine, nothing in Lopez's actions indicates that he actually induced or manipulated Guia to commit the offenses or that an ordinarily law-abiding person of average resistance would have committed them. *See* Tex. Pen.Code Ann. § 8.06(a) (providing conduct merely affording defendant opportunity to commit offense does not constitute entrapment); *Reese v. State*, 877 S.W.2d 328, 333 (Tex.Crim.App.1994) (same). Moreover, although initially Guia may have tried to "rip Lopez off" in the second transaction, the record reflects he ultimately delivered the cocaine. Guia argues that he did so "out of fear" because Lopez had three guns, but Lopez testified that he did not display his guns to Guia. As the fact-finder, the jury was free to accept Lopez's testimony. Given the record before us, we conclude the evidence is legally and factually sufficient to support both the verdict of guilt and the rejection of Guia's entrapment defense. We resolve Guia's third and fourth issues against him.

## Sufficiency of Evidence to Support Rejection of Duress Defense

██ In his final issue, Guia challenges the factual sufficiency of the evidence to support the jury's rejection of his duress defense in the second case. In making this argument, Guia relies again on the evidence showing that he completed the second delivery only after Lopez, who was armed with three guns, confronted him.

██ Duress is an affirmative defense requiring the defendant to prove by a preponderance of the evidence that he committed the offense "because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." TEX. PEN.CODE ANN. §§ 2.04(d) (Vernon 2003), 8.05(a) (Vernon 2003); *Edwards v. State*, 106 S.W.3d 833, 843 (Tex. App.-Dallas 2003, pet. ref'd). To establish compulsion, a defendant must prove that "the force or threat of force rendered a person of reasonable firmness incapable of resisting the pressure." TEX. PEN.CODE ANN. § 8.05(c); *Edwards*, 106 S.W.3d at 843. In reviewing a challenge to the sufficiency of the evidence to support the rejection of the affirmative defense of duress, we consider all the evidence to determine whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 154 (Tex.Crim. App.1990). We will find the evidence factually sufficient to support the rejection of a claim of duress where the evidence shows that the defendant intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion. TEX. PEN.CODE ANN. § 8.05(d).

Viewing the evidence here under the appropriate standard, we cannot conclude the overwhelming weight of the evidence supports Guia's claim of duress. Other than Lopez's carrying three guns, which

Lopez maintained he did not show to Guia, we find nothing in the record that would support or even suggest that Guia was compelled to act because of threats. If anything, the evidence shows that, by attempting to "rip Lopez off" and then heading to his home where he could be easily found, Guia placed himself in a situation in which he could have been subjected to compulsion and defeated any claim of duress. *See id.* We resolve Guia's final issue against him.

## Modification of Judgment

██ We note that the trial court's judgment in each case incorrectly reflects the applicable punishment range to be "5–99 years or life" and incorrectly states that Guia waived his right of appeal and right to file or urge any motion for new trial. Because Guia had previously been convicted of a felony drug offense and was punished as a habitual offender, the applicable punishment range is life or not more than ninety-nine years or less than fifteen years. TEX. PEN.CODE ANN. § 12.42(c)(1) (Vernon Supp.2006). Accordingly, we modify the judgment to so reflect. *See* TEX.R.APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex.Crim.App.1993). We also modify the judgment to delete the recitation that Guia waived his appellate rights because nothing in the record supports this. *See* TEX.R.APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27–28.

## Conclusion

Having concluded, based on the chemist's testimony, that the composite testing under these circumstances provided legally and factually sufficient evidence to show Guia delivered the requisite amount of cocaine, and having concluded that the jury's implicit rejection of Guia's defensive theories is supported by legally and factually

sufficient evidence, we affirm the trial court's judgments as modified.