PD-1467-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/22/2014 3:03:11 PM
Accepted 12/29/2014 2:22:36 PM
ABEL ACOSTA
CLERK

# CAUSE NO. PD-1467-14

## IN THE
## COURT OF CRIMINAL APPEALS OF TEXAS

_____

### STEPHEN CRAIG WHITWORTH
#### Appellant/Petitioner

### V.

### STATE OF TEXAS
#### Appellee/Cross-Petitioner

_____

From the Eleventh Court of Appeals, Eastland, Texas
Appellate Cause No. 11-12-00114-CR

Tried in the 441st District Court, Midland County, Texas
Trial Cause No. CR38839

_____

## STATE'S CROSS-PETITION FOR DISCRETIONARY REVIEW
_____

Teresa Clingman
*District Attorney, Midland County, Texas*

FILED IN
COURT OF CRIMINAL APPEALS

December 29, 2014

ABEL ACOSTA, CLERK

Carolyn D. Thurmond
*Assistant District Attorney*
State Bar No. 00785104
500 North Loraine, Suite 200
Midland, Texas 79701
(432) 688-4420 voice
(432) 688-4938 fax
carolyn_thurmond@co.midland.tx.us

## LIST OF PARTIES AND THEIR COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a), the State certifies the following is a complete list of the names and addresses of the parties to the final judgment of trial and their counsel.

Appellant, Trial and Appellate Counsel

- **Stephen Craig Whitworth, Appellant**
  Inmate, Texas Department of Criminal Justice

- **David Martinez**
  Attorney at Law
  1663 Broadway
  Lubbock, Texas 79401
  *Appellate Counsel*

- **Rick A. Navarrete**
  NAVARRETE & SCHWARTZ
  1007 West Texas Avenue
  Midland, Texas 79701
  *Former Appellate Counsel*

- **Roy Scott**
  Attorney at Law
  407 N. Big Spring St., Ste. 200
  Midland, Texas 79701
  *Trial Counsel*

State of Texas Trial Counsel and Appellate Counsel

- **The State of Texas, Appellee/Petitioner**

- **Teresa Clingman**
  District Attorney for Midland County, Texas
  500 N. Loraine, Ste. 200
  Midland, Texas 79701

- **Laura Nodolf**, First Assistant District Attorney
  500 N. Loraine, Ste. 200
  Midland, Texas 79701
  *Trial Counsel*

- **Carolyn D. Thurmond**, Assistant District Attorney
  500 N. Loraine, Ste. 200
  Midland, Texas 79701
  *Appellate Counsel*

Trial Judge

- **Hon. Rodney W. Satterwhite**
  441st District of Midland County, Texas
  500 N. Loraine, Ste. 901
  Midland, Texas 79701

# TABLE OF CONTENTS

## Table of Contents

LIST OF PARTIES AND THEIR COUNSEL.............................................ii

TABLE OF CONTENTS ..........................................................................iv

INDEX OF AUTHORITIES ....................................................................vi

STATEMENT REGARDING ORAL ARGUMENT ..................................2

STATEMENT OF THE CASE ..................................................................2

STATEMENT OF PROCEDURAL HISTORY .........................................3

STATE'S GROUND FOR REVIEW ........................................................5

> **The defense of duress requires the defendant must not intentionally, knowingly or recklessly place himself in a situation in which it is probable he would be subjected to compulsion. A defendant who associated with a drug dealer and discussed the murder of another subjected himself to the compulsion. Did the Court of Appeals err in holding the trial court abused its discretion for failing to instruct the jury on the defense of duress.**

ARGUMENT ..............................................................................................6

    A. Court of Appeals Opinion ............................................................6

    B. Standard of Review.......................................................................6

    C. The Law of Duress Defense .........................................................7

    D. Application of Law to the Facts ...................................................9

PRAYER FOR RELIEF..................................................................13

CERTIFICATE OF SERVICE....................................................15

CERTIFICATE OF COMPLIANCE.......................................16

APPENDIX....................................................................................1

# INDEX OF AUTHORITIES

**Cases**

*Anguish v. State*, 991 S.W.2d 883 (Tex. App.—Houston [1ˢᵗ Dist.] 1999, pet. ref'd) ............................................................................8

*Bernal v. State*, 647 S.W.2d 699, 706 (Tex. App. – San Antonio 1982, no pet.) ......................................................................................9

*Cameron v. State,* 925 S.W.2d 246, 250 (Tex app – El Paso, 1995, no pet.) ......................................................................................9

*Guffey v. State*, 11-10-00106-CR, 2012 Tex. App. LEXIS 3293 (Tex. App.—Eastland 2012, pet. ref'd) ..........................................11

*Guia v. State*, 220 S.W.3d 197 (Tex. App. – Dallas 2007, pet. ref'd) ......10

*Muniz v. State*, 851 S.W.2d 238 (Tex. Crim. App. 1993) .........................7

*Pennington v. State*, 54 S.W.3d 852, 856 (Tex. App.—Fort Worth 2001, pet. ref'd). ...............................................................................7

*Ramirez v. State*, 336 S.W.3d 846 (Tex. App.—Amarillo 2011, pet. ref'd). ................................................................................8

*Whitworth v. State*, 11-12-00114-CR, 2014 Tex. App. LEXIS 5864 (Tex. App.—Eastland 2014)...........................................2, 4, 6, 11

*Whitworth v. State*, 2014 Tex. App. LEXIS 10922 (Tex. App.—Eastland 2014).............................................................................5

**Statutes**

Tex. Penal Code § 1.07(a)(10) (2011) ......................................................8

Tex. Penal Code Ann. § 19.02(b)(1) (2011) .............................................3

TEX. PENAL CODE ANN. § 19.02(b)(2) (2011) ............................................... 3

TEX. PENAL CODE ANN. § 22.02(a)(1) (2011) ............................................... 3

TEX. PENAL CODE ANN. § 22.02(a)(2) (2011) ............................................... 3

TEX. PENAL CODE ANN. § 8.05(a) (2011) ..................................................... 7

TEX. PENAL CODE ANN. § 8.05(c) (2011) ................................................. 7, 8

TEX. PENAL CODE ANN. § 8.05(d) (2011) ................................................. 8, 9

## Rules

TEX. R. APP. P. 38.1(a), ......................................................................... ii

TEX. R. APP. P. 66.3(b) ......................................................................... 12

TEX. R. APP. P. 66.3(f) .......................................................................... 12

TEX. R. APP. P. 68.2(b) ........................................................................... 5

**CAUSE NO. PD-1467-14**

**IN THE**
**COURT OF CRIMINAL APPEALS OF TEXAS**

_____

**STEPHEN CRAIG WHITWORTH**

**Appellant/Petitioner**

**V.**

**STATE OF TEXAS**

**Appellee/Cross-Petitioner**

_____

**STATE'S CROSS-PETITION FOR DISCRETIONARY REVIEW**

_____

COMES NOW the State of Texas, by and through her District Attorney, and respectfully asks this Honorable Court to grant discretionary review of the above named cause and pursuant thereof would show the Court as follows:

1

## STATEMENT REGARDING ORAL ARGUMENT

The State requests oral argument. The issues raised by both parties involve defenses of duress and necessity and the circumstances of the propriety for the trial court to instruct to the jury concerning these defenses. Oral argument is necessary in this case for full development of these issues.

## STATEMENT OF THE CASE

Stephen Craig Whitworth, hereafter referred to as "Appellant," was tried by jury for the offenses of murder in Count One, and aggravated assault with the intent to cause serious bodily injury in Count Two. (CR[1] 8-10). The Court of Appeals rejected the State's argument Appellant placed himself in a situation in which he could be subjected to compulsion to commit an offense such as murder. *Whitworth v. State*, 11-12-00114-CR, 2014 Tex. App. LEXIS 5864, **12-14 (Tex. App.—Eastland 2014, pet. filed) (mem. op., not designated for publication). Appellant associated with the co-

---

[1] References to the Clerk's Record are abbreviated as "CR", followed by the page number.

2

defendant who supplied marijuana; Appellant believed the co-defendant associated with members of a prison gang; also discussed committing rape and murder.

## STATEMENT OF PROCEDURAL HISTORY

### *Proceedings in the Trial Court*

Appellant was indicted in the 441st District Court of Midland County, Texas, on August 11, 2011, for the offenses of Murder of Christopher Easley in Count One, and Count Two, Aggravated Assault with the intent to cause serious bodily injury to Anne Bostic. (CR 8-10). *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (2011), TEX. PENAL CODE ANN. § 19.02(b)(2) (2011), TEX. PENAL CODE ANN. § 22.02(a)(1) (2011), TEX. PENAL CODE ANN. § 22.02(a)(2) (2011). After the presentation of evidence and argument of counsel, the jury found Appellant guilty of the offenses of Murder of Christopher Easley and Aggravated Assault causing serious bodily injury to Anne Bostic as alleged in the indictment. (CR 80, 82; RR[2]9 60-61). The jury

---

2 References to the Reporter's Record are abbreviated as "RR" followed by the volume number and page number.

sentenced Appellant to 20 years imprisonment in the Texas Department of Criminal Justice Institutional Division for each count. (CR 95, 96; RR10 72-73). The sentences were pronounced on March 26, 2012. (CR 103, 108; RR10 75-76). The Judgment of Conviction as to each count was entered on April 3, 2012. (CR 103-107, 108-113). Appellant timely filed a notice of appeal. (CR 65).

***Proceedings in the Court of Appeals***

On May 30, 2014, the Eleventh Court of Appeals affirmed Appellant's conviction for murder in Count One. *Whitworth v. State*, 11-12-00114-CR, 2014 Tex. App. LEXIS 5864, *11 (Tex. App.—Eastland 2014, pet. filed). The Court reversed Appellant's conviction in Count Two for aggravated assault and remanded the case back to the trial court for a new trial. *Id.* at *18.

Appellant requested a rehearing to review the sufficiency of the evidence under the law of parties as to Count One. The State did not file a motion for rehearing as to the decision in Count Two. The Court of Appeals directed the State to file a response. On September

30, 2014, the Court of Appeals denied the Motion for Rehearing and issued an opinion finding the evidence was sufficient to support Appellant's conviction for murder under the law of parties. *Whitworth v. State*, 2014 Tex. App. LEXIS 10922 *3 (Tex. App.— Eastland 2014) (mem. op. on reh'g, not designated for publication).

The State now petitions this Court to review the opinion and judgment of the Court of Appeals as to Count Two, the reversal of the conviction for aggravated assault. See TEX. R. APP. P. 68.2(b) (Even if time to file a petition for discretionary review has expired, a party may otherwise do so within 10 days after the timely filing of another party's petition).

## STATE'S GROUND FOR REVIEW

**The defense of duress requires the defendant must not intentionally, knowingly or recklessly place himself in a situation in which it is probable he would be subjected to compulsion. A defendant who associated with a drug dealer and discussed the murder of another subjected himself to the compulsion. Did the Court of Appeals err in holding the trial court abused its discretion for failing to instruct the jury on the defense of duress?**

5

## ARGUMENT

### A. Court of Appeals Opinion

Appellant requested instructions on the defenses of duress and necessity for each count at the charge conferences. (RR[3]8 305; RR9 7). The prosecutor objected to the inclusion of the both jury instructions on the basis Appellant placed himself in the situation in which he would be subjected to the compulsion. (RR8 305-308). The trial court denied the requested instructions. (RR8 308).

In its evaluation of the jury instructions for Count Two, the Court of Appeals disagreed with the State's argument Appellant was not entitled to an instruction on the defense of duress because he placed himself in a situation in which it was probable for him to be subjected to compulsion. *Whitworth*, 2014 Tex. App. LEXIS 5864 at *14.

### B. Standard of Review

It is well settled that a defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of

---

[3] References to the Reporter's Record are abbreviated as "RR" followed by the volume number and page number.

6

whether that evidence is strong, feeble, unimpeached, or contradicted. *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007). If the issue is raised by a party, refusal to submit the requested the requested instruction is reviewed under the abuse of discretion standard. *See Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). The evidence submitted in support of a justification defense is reviewed in the light most favorable to the defendant. *See Pennington v. State*, 54 S.W.3d 852, 856 (Tex. App.— Fort Worth 2001, pet. ref'd).

## C. The Law of Duress Defense

The duress defense is available if "the actor engaged in the proscribed conduct because he was compelled to do by threat of imminent death or serious bodily injury to himself or another." TEX. PENAL CODE ANN. § 8.05(a) (2011). Compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." TEX. PENAL CODE ANN. § 8.05(c) (2011). Furthermore, the defense is unavailable if the actor, "intentionally, knowingly, or recklessly placed himself in a situation

in which it was probable he would be subjected to the compulsion." TEX. PENAL CODE ANN. § 8.05(d) (2011).

In order to raise the defense of duress, the evidence must show both compulsion and immediacy. Compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." TEX. PENAL CODE ANN. § 8.05(c) (2011). There are two components to immediacy. *Anguish v. State*, 991 S.W.2d 883, 886-887 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). First, the person making the threat must intend and be prepared to carry out the threat immediately. Second, carrying out the threat must be predicated upon the threatened person's failure to commit the charged offense immediately. *Id.*; *Ramirez v. State*, 336 S.W.3d 846, 851 (Tex. App.—Amarillo 2011, pet. ref'd). Furthermore, to avail oneself of the defense the accused must admit to having engaged in the proscribed conduct. *Ramirez*, 336 S.W.3d at 851. Conduct is defined as, the act or omission and the culpable mental state. TEX. PENAL CODE § 1.07(a)(10) (2011).

**D. Application of Law to the Facts**

The evidence at trial showed Appellant mentioned in his statement to Sheriff's Investigator Hunnicutt that he was afraid of Paul Curtis Lee, (hereafter referred to as "Lee") because he could overpower him. (RR6 156). Appellant also said he was afraid of Lee because of his alleged connection to the Texas Syndicate. (RR6 156). The claim of duress must have an objective reasonable basis. *Cameron v. State,* 925 S.W.2d 246, 250 (Tex app – El Paso, 1995, no pet.) (defendant generally afraid of co-defendant's temper, there is no evidence of a specific threat). *Bernal v. State*, 647 S.W.2d 699, 706 (Tex. App. – San Antonio 1982, no pet.) (fear that co-defendant might get violent if defendant did not 'take his turn" in rape held insufficient to raise defense of duress).

Furthermore, the defense is unavailable if the actor, intentionally, knowingly, or recklessly placed himself in a situation in which it was probable he would be subjected to the compulsion." TEX. PENAL CODE ANN. § 8.05(d) (Jones McClure 2012). Appellant told Investigator Hunnicutt that Lee discussed he wanted to murder

9

someone. He also expressed the desire to rape and kill someone. (RR6 123; State's Exhibit 69). Appellant admitted he lived with a drug dealer who regularly supplied him with marijuana. (RR8 110-112).

The events of the night of June 5 through June 6, 2011, show appellant placed himself in the situation where he would be subjected to the compulsion. Appellant and Lee had smoked dope at the duck pond on "A" Street in Midland, Texas, earlier in the evening. Appellant contacted Bostic for the express purpose to smoke marijuana. (RR8 120). Lee and Whitworth drove Easley and Bostic out to a deserted pump jack in the county to smoke marijuana rather than going back to the duck pond. The trial court determined Appellant had placed himself in a situation in which it was probable he would be subjected to the compulsion in its denial of the duress instruction. (RR8 306-307).

The Court of Appeals took issue with the State's reference to *Guia v. State*, 220 S.W.3d 197, 205 (Tex. App. – Dallas 2007, pet. ref'd), to support its contention of a defendant subjecting himself to

10

compulsion. The State pointed out that in *Guia,* the defendant attempted to rip off undercover police officer in drug dealing transaction, he placed himself in a situation in which he recklessly was subjected to compulsion. Appellant in the case before the court, associated with Lee who supplied him with marijuana and discussed killing another person. (RR6 123; State's Exhibit 69; RR8 110-112).

The Court of Appeals also disagreed with the State's contention the *Guffey* case was instructive here. *Guffey v. State*, 11-10-00106-CR, 2012 Tex. App. LEXIS 3293 (Tex. App.—Eastland 2012, pet. ref'd) (mem. op., not designated for publication). The State argued that in *Guffey*, the Eastland Court of Appeals held the trial court denied instruction for duress as defendant was a member of Aryan Brotherhood; therefore, it was probable he could be subjected to compulsion. *Id.* The Court of Appeals distinguished *Guffey*, on the ground that the defendant was a member of a gang and as such, was expected to follow orders. *Whitworth,* 2014 Tex. App. LEXIS 5864 at *14. Although there is not any evidence Appellant was seeking membership into a gang; Appellant, like Defendant Guffey,

continued to associate with a person he believed had connections to a gang, i.e. the Texas Syndicate, regularly smoked marijuana and engaged in activities to consume more marijuana this evening in question. Whitworth had knowledge of Lee's desire to commit murder, as such; he intentionally, knowingly and recklessly subjected himself to the compulsion. The trial court was correct to deny the requested jury instruction of duress in Count Two.

For these reasons the Eleventh Court of Appeals erred in its reversal of the conviction for aggravated assault on the ground the trial court erred by denying Appellant's request for the instruction on duress. The Court of Appeals erred in its analysis that Appellant did not place himself in a situation in which he would be subject to compulsion to commit aggravated assault. This is an important question of state law which should be settled by the Court of Criminal Appeals. TEX. R. APP. P. 66.3(b). Furthermore, the Court of Appeals departed from the usual and accepted course of judicial proceedings so as to call on the exercise of the Court of Criminal Appeals' power of supervision. TEX. R. APP. P. 66.3(f).

12

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** the State prays the Court of Criminal Appeals grant this Cross-Petition for Discretionary Review, that the case be set for submission to the Court of Criminal Appeals; that after submission, this Court reverse the decision of the Court of Appeals to reverse the conviction on aggravated assault count. Alternatively, the State prays that the judgment of the Court of Appeals be reversed and the case remanded to the Court of Appeals for application of the proper legal standard. Alternatively the State prays for a summary remand to the Court of Appeals.

Respectfully submitted,

Teresa Clingman
District Attorney of Midland County, Texas

By:

*/S/ Carolyn D. Thurmond*

Carolyn D. Thurmond
Assistant District Attorney
State Bar No. 00785104
500 North Loraine, Suite 200
Midland, Texas 79701
(432) 688-4938 fax
(432) 688-4420 voice
carolyn_thurmond@co.midland.tx.us

14

## CERTIFICATE OF SERVICE

I, Carolyn D. Thurmond, do hereby certify that on the 22nd day of December 2014, I sent a true and correct copy of the foregoing State's Petition for Discretionary Review by United States Mail, hand delivery or EServe or email to the following entities:

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
Capitol Station
Austin, TX 78711
Information@spa.texas.gov

David Martinez
Attorney at Law
1663 Broadway
Lubbock, Texas 79401
Email: dmtz@aol.com
Attorney for Appellant

/S/ Carolyn D. Thurmond
_____
Carolyn D. Thurmond
Assistant District Attorney

15

## CERTIFICATE OF COMPLIANCE

I certify the State's Cross-Petition for Discretionary Review was prepared with Microsoft Word 2010 and that according to that program's word-count function, the sections covered by TEX. R. APP. P. 9.4(i)(1) contain 1,434 words. I further certify the body text is Century Schoolbook 14 point font and the footnote text is 12 point font.

By:

*/S/ Carolyn D. Thurmond*

_____

Carolyn D. Thurmond
Assistant District Attorney

# <u>APPENDIX</u>

1. Memorandum Opinion of the 11TH Court of Appeals, issued on May 30, 2014.

2. Memorandum Opinion on Motion for Rehearing, issued on September 30, 2014.



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00114-CR

_____

## STEPHEN CRAIG WHITWORTH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 441st District Court

### Midland County, Texas

### Trial Court Cause No. CR38839

### M E M O R A N D U M   O P I N I O N

The jury convicted Stephen Craig Whitworth of murder and aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 7.01 (parties to offenses), 7.02 (criminal responsibility for conduct of another), 19.02(b)(1), (2) (murder), 22.02(a) (aggravated assault) (West 2011). The jury assessed his punishment at confinement for twenty years on each count. The trial court

sentenced him accordingly and ordered his sentences to run concurrently. Appellant raises four issues on appeal. Because we find that the trial court erred when it failed to instruct the jury on the defense of duress as to the aggravated assault charge, we reverse and remand with respect to Appellant's conviction for aggravated assault with a deadly weapon. We affirm Appellant's conviction for murder.

The evidence at trial showed that Appellant and Paul Lee picked up Anne Bostic and Chris Easley at approximately 4:00 a.m. on June 6 to go smoke marihuana. Lee drove the four of them to a shut-down pump jack in Midland. Bostic testified that, after the four of them finished smoking a marihuana blunt, Lee called Easley to the trunk of the car and said he wanted to show Easley something. Easley walked to the rear of the car. Bostic was sitting sideways in the rear seat on the driver's side with her feet hanging out of the car when she heard the trunk slam and someone get hit. She stood up and saw Easley's legs on the ground. Lee was kneeling over the top of Easley and hitting him multiple times. Lee stopped, and Bostic could hear Easley gargling and wheezing. Lee went back to Easley, and Bostic could hear air escaping from Easley's lungs, like he had been stabbed.

Easley suffered four crushing blows to his face and four stab wounds to his chest. His heart was perforated by two of the stab wounds, and bone fragments penetrated his brain due to the crushing blows to his forehead; he died as a result of the injuries. There was no dispute that Lee killed Easley.

Bostic testified that, as Lee was attacking Easley, Appellant held her and forced her to watch the murder. She said that Appellant told her that she needed to watch and that Easley needed to be taught a lesson. Appellant took her to the front of the car, and she asked him if they were going to hurt her. He told her that they were not going to hurt her but that they were going to have to take her somewhere

2

and that she could not talk to anyone for six months. Bostic testified that Appellant left her at the front of the car and went and talked to Lee. When she started walking away, Appellant came up behind her, started choking her, and popped her neck. Bostic let her body go limp, and she fell to the ground and "played dead." Appellant dragged her over to a bush at the place where he had already dragged Easley. Bostic heard him say, "She's dead. It's okay. She's dead." Bostic then heard footsteps coming toward her. Someone lifted her head by her hair and cut her throat. She felt blood pouring out of her throat and felt a hand on her back. Bostic testified that she passed out, woke up next to Easley, and heard Lee and Appellant getting in Lee's car and leaving. She waited until the sun came up and started walking down the road.

Bostic was able to get back to the main road where a man saw her running and waving her hands as if she was in need of help. The man stopped to help her, called 911, and gave her water and a shirt that she could use to stop the bleeding from her neck. Bostic was treated at Midland Memorial Hospital. She required immediate surgical intervention in order to survive. She had suffered major trauma to her neck; her internal jugular veins had been cut. Bostic also suffered multiple stab wounds to her torso.

Appellant testified that he, Lee, Bostic, and Easley were standing around the trunk of the car smoking marihuana when Lee, out of nowhere, attacked Easley with a set of bolt cutters that Lee had gotten from the trunk of the vehicle. Appellant testified that he did not try to stop Lee when Lee was hitting Easley because he knew that Lee could overpower him and that Lee had a weapon; he was afraid of Lee. He grabbed Bostic by her hand and walked her to the front of the car. Appellant made her sit on the car and face him. He told her not to watch and to stay calm. Both he and Bostic were "freaking out." Appellant saw Lee hit Easley over and over again with the bolt cutters and saw Lee stab Easley in the

3

neck and in the chest.  He did not want to run because Lee had the keys to the car and because he was afraid Lee would chase him down in the car.  He also did not want to leave Bostic and did not think she would be able to run because Easley had had to help her to the car when Lee and Appellant picked them up to go smoke marihuana.

After Lee had killed Easley, he walked over to Appellant and told him that he needed to get rid of Easley's body.  Appellant, according to his testimony, just stood there.  Lee gave Appellant "a look" and again told him to get rid of the body.  Appellant walked to the back of the vehicle and was horrified and shocked by what he saw.  He was scared of what Lee could do to him and Bostic after he saw what Lee had done to Easley.  Lee told him again to get rid of the body, and because Appellant did not want Lee to kill him, Appellant dragged Easley to a nearby bush.  Appellant went back to check on Bostic.

Lee asked to see Appellant's cell phone, and he typed a message on Appellant's phone that said it was Appellant's turn to finish Bostic and, if he did not finish her, he would be next.  Appellant testified that he believed that meant, if he did not kill Bostic, Lee would kill him.  Appellant took Bostic fifty feet away from the vehicle and pretended to break her neck by putting her in a choke hold and cracking his knuckles loudly.  He testified that he was trying to make her pass out.  Her body went limp, and he put her on the ground.  He told Lee that she was dead. Lee said, "She's still breathing.  You've got to stab her."  Appellant told Lee that he could not do that and tried to convince Lee that he had broken her neck and that she was already dead.  Lee told Appellant to give him his knife.  Appellant testified that he was scared and that Lee had this look on his face like he was going to do something to Appellant if he did not comply.  Appellant gave Lee his knife, and Lee stabbed Bostic four times in the back.  Lee then told Appellant to help move her body next to Easley's body.  The two moved her body and started

walking away. Lee began to have second thoughts about Bostic being alive. Appellant again tried to convince him that she was dead and that he should just leave her alone. Lee walked back to her body and stabbed her in the neck.

Lee and Appellant went back to the Travelodge where they were living at the time, and Lee ordered him to take a shower. Appellant testified that he started taking sleeping pills in an effort to overdose because he did not want to live after what he had seen. He then decided that he still needed to tell the police what had happened, so he stopped taking the pills. After they had showered and picked up their roommate from work, Lee told Appellant that Appellant had to go with him to get rid of the clothes that they had been wearing. They drove to a dirt road and set the clothes on fire. Appellant and Lee then returned to the Travelodge and went to sleep. Appellant testified that he could not leave because Lee was watching him and never let him out of his sight. He tried to stay awake until Lee fell asleep, but the sleeping pills made him fall asleep first. Appellant was later awakened by Midland County Sheriff's officers, and they apprehended him and Lee.

In his first issue, Appellant argues that the evidence was insufficient to support his conviction as the principal actor for the murder of Easley and the aggravated assault with a deadly weapon of Bostic. He specifically argues that the State failed to prove that Appellant himself, as the principal actor, personally committed either of the charged felonies. Appellant asserts that the State relied on the law of parties to convict Appellant; however, Appellant does not challenge the sufficiency of the evidence to support his convictions of murder and aggravated assault with a deadly weapon based upon the law of parties. The jury was instructed under both principal and party theories as to each charge and returned a general verdict of guilty on each. Even if we were to agree that the evidence was insufficient to support the convictions of Appellant as a principal actor, he has failed to challenge the sufficiency of the evidence under the law of parties and has

5

repeatedly stated in his brief that the jury could have convicted him only on the basis of the law of parties. Therefore, we overrule Appellant's first issue.

Appellant asserts in his third and fourth issues that the trial court erred when it denied his request for a jury instruction on the defense of duress and the defense of necessity. When the evidence at trial raises a defensive issue, and the defendant properly requests a jury instruction on that issue, the trial court must submit the issue to the jury. *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). When determining whether the evidence raises a defense, the credibility of the evidence is not at issue; the evidence may be strong, weak, contradicted, unimpeached, or unbelievable. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993).

The doctrine of confession and avoidance applies to the defense of duress and the defense of necessity. *Juarez v. State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010) (necessity); *Gomez v. State*, 380 S.W.3d 830, 834 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (duress). Thus, to be entitled to an instruction on the defense of duress, Appellant must point to defensive evidence that shows that he admits to every element of the offense, including the culpable mental state. *Shaw*, 243 S.W.3d at 659.

The State argues that Appellant did not admit to the charged conduct: murder and aggravated assault with a deadly weapon. Although the State is correct in this assertion as far as Appellant's involvement as a principal is concerned, Appellant did admit to conduct that could implicate him as a party to the offense of aggravated assault with a deadly weapon. A person can be held criminally responsible as a party to an offense, even when the person does not

commit the actual offense, if the person is criminally responsible for the act of another. *See* TEX. PENAL CODE ANN. § 7.01 (West 2011). A person is criminally responsible for an offense committed by the conduct of another if, with the intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

The State argues that Appellant denied assisting in the offense as a party because, when specifically asked whether he solicited, encouraged, directed, aided, or attempted to aid Lee in murdering Easley or in assaulting Bostic, he responded that he did not. However, Appellant testified that, when Lee told him to stab Bostic and he responded that he could not do that, Lee demanded Appellant's knife. Appellant handed Lee his knife, and Lee stabbed Bostic. In addition, in his statement to police, Appellant said that he told Lee that Bostic was still breathing and that he told Lee to "finish her." Thus, although Appellant never admitted to actually stabbing Bostic or to committing the specific acts as listed in the statute, he did admit to conduct that showed that he aided and encouraged Lee to commit the offense of aggravated assault with a deadly weapon.

We do not believe, however, that Appellant admitted to conduct that would implicate him as a party to the offense of murder. The only act in relation to the murder of Easley that Appellant admitted to was that he dragged Easley's body to a bush after Lee told him multiple times to do so. This conduct occurred after Lee had already committed the offense of murder. Acts done after the offense is completed do not make the accused a party to the offense. *Gross v. State*, 380 S.W.3d 181, 185–88 (Tex. Crim. App. 2012); *Morrison v. State*, 608 S.W.2d 233, 235 (Tex. Crim. App. 1980). Thus, Appellant did not admit to conduct that made him liable as a party to the offense of murder. The trial court did not err when it denied Appellant's request for an instruction on the defenses of duress and

7

necessity as to the charge of murder. We overrule Appellant's third and fourth issues as to the murder charge.

As to the aggravated assault charge, we must now look to whether the evidence supports an instruction on the defense of duress. The affirmative defense of duress requires the actor to have engaged in the conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. PENAL § 8.05(a). Compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Id.* § 8.05(c). The affirmative defense of duress is not available if the actor "intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." *Id.* § 8.05(d).

Appellant testified that Lee typed a message on Appellant's phone that said that it was Appellant's turn to finish Bostic and that, if he did not finish her, he would be next. Appellant believed that Lee meant that, if Appellant did not kill Bostic, Lee would kill him. Appellant then pretended to kill her and told Lee that she was dead. When Lee told Appellant that she was still breathing and that Appellant needed to stab her, Appellant told Lee that he could not do that and tried to convince Lee that she was already dead. Lee called Appellant a "pussy" and told Appellant to give him his "f-----g" knife. Appellant testified that he was scared and that Lee had this look on his face like he was going to do something to Appellant if he did not comply. Appellant gave Lee his knife, and Lee stabbed Bostic.

Appellant also testified that Lee had become more aggressive since he started selling marihuana. Lee was bigger and taller than Appellant and had overpowered him in several physical altercations. Appellant also testified that Lee had connections with prison and street gangs and that he feared what Lee could do to him if he told the police what had happened. He explained that the reason he

8

finally told police about what had happened was because he was moved to "segregation" in jail and realized that Lee could not get to him there.

After reviewing the relevant evidence, we find that the evidence does support an instruction on the defense of duress. Appellant testified that he pretended to kill Bostic because he was afraid Lee was going to kill him if he did not kill her and that he gave Lee his knife to stab Bostic because he was afraid of what Lee would do to him. In addition, Appellant's testimony indicates that the incident with Bostic occurred after Appellant watched Lee kill Easley and after he was forced to drag Easley's body to a bush—an act that he also testified he committed because he was in fear for his and Bostic's lives. Thus, Appellant presented some evidence, regardless of how strong, weak, contradicted, unimpeached or unbelievable, to show that he engaged in conduct to aid and encourage Lee to commit the offense of aggravated assault against Bostic because he was compelled to do so by threat of imminent death or serious bodily injury. *See Muniz*, 851 S.W.2d at 254.

The State argues that, even if the defense was raised in this case, Appellant was not entitled to an instruction because he placed himself in a situation in which it was probable for him to be subjected to compulsion. We disagree. The State directs us to *Guia v. State*, 220 S.W.3d 197 (Tex. App.—Dallas 2007, pet. ref'd), and *Guffey v. State*, No. 11-10-00106-CR, 2012 WL 1470185 (Tex. App.—Eastland April 26, 2012, pet. ref'd) (mem. op., not designated for publication), to support its argument. Each of these cases is distinguishable from the circumstances of this case.

In *Guia*, the Dallas Court of Appeals was asked to review the sufficiency of the evidence to support the jury's rejection of the defendant's duress defense. *Guia*, 220 S.W.3d at 205. The court stated that it would "find the evidence factually sufficient to support the rejection of a claim of duress where the evidence

9

shows that the defendant intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." *Id.* After reviewing the evidence, the court held that it could not conclude that the overwhelming weight of the evidence supported the defendant's claim of duress. *Id.* The court in *Guia* did not hold that the defendant was not entitled to an instruction on duress but, rather, that the evidence was sufficient to support the jury's rejection of the defense. *Id.* The question before us is not one of sufficiency of the evidence, but one addressed at entitlement to a jury issue. Furthermore, the defendant in that case claimed that he sold drugs to an undercover police officer only after the officer confronted him, armed with three guns. *Id.* However, the evidence showed that the officer gave the defendant money to buy drugs and that the defendant then took off. *Id.* at 200. The officer later found the defendant at his home and demanded that the defendant give him the drugs. *Id.* The officer had already purchased drugs from the defendant at an earlier date. *Id.* at 200. The circumstances in *Guia* are very different from the facts of this case; *Guia* does not support the State's argument that Appellant was not entitled to an instruction on the defense of duress.

In *Guffey*, we held that the defendant was not entitled to an instruction because the evidence showed that he was a member of the Aryan Brotherhood and that a higher ranking member commanded him to kidnap a woman that had just ended a romantic relationship with the higher ranking gang member. *Guffey*, 2012 WL 1470185, at *1, 3. We explained that the defendant, through his membership in the Aryan Brotherhood, placed himself in a situation in which he would be obligated to carry out orders from higher ranking members and, thus, placed himself in a situation in which he would be subjected to compulsion. *Id.* at *3–4.

Here, the State contends that Appellant also placed himself in a situation in which he would be subjected to compulsion because Appellant continued to live

10

with and associate with a person that he believed had connections with organized crime, a person that had expressed a general desire to murder and rape someone, a person that had dealt and consumed drugs, and a person that was bigger than Appellant and could overpower him. These circumstances are very different from the circumstances in *Guffey* in which the defendant was a member of a gang and, through that membership, knew that he would have to take orders from higher ranking members. The evidence here did not show that Lee had ever threatened Appellant to act in a certain way or that Appellant was afraid that Lee would use his prison gang connections against him prior to the murder and aggravated assault. Furthermore, we do not believe that Appellant's testimony, that Lee had recently made the comment that Lee wanted to murder and rape someone, shows that Appellant placed himself in a situation in which he would be forced to commit such a heinous crime. Therefore, because we find that Appellant admitted to conduct that made him responsible as a party to the aggravated assault, that Appellant testified that he was in fear for his life when he committed such conduct, and that the evidence does not show that he placed himself in a situation in which he would be subject to compulsion, we hold that the trial court erred when it denied Appellant's request for an instruction on the defense of duress.

Having found that the trial court erred, we must now determine whether the error was harmful. A properly preserved error in the jury charge requires reversal if the error was calculated to injure the rights of the defendant, meaning that reversal is required if the accused suffered some harm from the error. TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). The actual degree of harm caused by the error must be determined in light of the entire jury charge; the state of the evidence, including the contested issues and the weight of the probative evidence; the argument of counsel;

11

and any other relevant information revealed by the record. *Almanza*, 686 S.W.2d at 171.

Here, Appellant properly preserved error when he requested the defensive instruction and when he objected to the trial court's exclusion of the instruction from the jury charge. Thus, if we find that Appellant suffered some harm from the trial court's decision to exclude the defensive instruction as to the aggravated assault charge, then we must reverse that conviction. Appellant's theory was that he was forced to participate in the aggravated assault because Lee threatened to kill him if he did not. Appellant testified that he had no idea that either of the crimes was going to take place and that he thought they were just going to smoke some marihuana and then were going to go to the motel and go to sleep. Because Appellant's defense in the aggravated assault case was based upon duress, we cannot say that he did not suffer some harm from the trial court's error. We sustain Appellant's third issue as to his conviction for aggravated assault with a deadly weapon.

Because we have found that the trial court erred when it failed to instruct the jury on the defense of duress, it is not necessary for us to address Appellant's fourth issue, as to the aggravated assault charge, in which Appellant contends that the trial court also erred when it failed to instruct the jury on the defense of necessity. *See* TEX. R. APP. P. 47.1. It is also not necessary for us to address Appellant's second issue as to whether the trial court erred when it excluded expert testimony regarding Appellant's susceptibility to duress. *See id.*

12

We affirm the judgment of the trial court as to Appellant's conviction and punishment for murder. We reverse the judgment of the trial court as to Appellant's conviction for aggravated assault with a deadly weapon, and we remand the cause to the trial court for further proceedings on that charge.


JIM R. WRIGHT

CHIEF JUSTICE


May 30, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00114-CR
_____

## STEPHEN CRAIG WHITWORTH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR38839**

### MEMORANDUM OPINION ON
### MOTION FOR REHEARING

Appellant, Stephen Craig Whitworth, has filed a motion for rehearing in this court in which he asks us to reconsider our opinion dated May 30, 2014. *See Whitworth v. State*, No. 11-12-00114-CR, 2014 WL 2527762 (Tex. App.—Eastland May 30, 2014, no pet. h.). Appellant contends in his motion that we erred when we held that Appellant did not challenge the sufficiency of the evidence

under the law of parties, and he urges us to consider the issue in the interest of justice. Although we believe that Appellant failed to present the issue to this court in his original briefing, we will address the issue in order to resolve any concerns that our original opinion may have raised. Because our analysis of this issue does not change our disposition of Appellant's appeal, we deny Appellant's motion for rehearing.

Appellant specifically argues that our opinion dated May 30, 2014, raises serious doubts as to whether Appellant was guilty as a party to the offense of murder because we held that Appellant's conduct of dragging Chris Easley to a bush, after Paul Lee had stabbed Easley with bolt cutters, was not conduct that implicated Appellant as a party to the offense of murder because it occurred after the offense. *See id.* at *4 ("Acts done after the offense is completed do not make the accused a party to the offense."). If Appellant's conduct of dragging Easley had been the only evidence at trial of Appellant's involvement in Easley's murder, Appellant would be correct in his assertion that the evidence was insufficient to support a conviction for murder under the law of parties. However, this was not the only evidence that was presented regarding Appellant's involvement in the murder; it was just the only act that Appellant admitted to committing.

Anne Bostic, who was present at the time of the murder, and Deven Bomar, who was housed with Appellant in the Midland County jail, testified regarding Appellant's involvement in the murder. Bostic testified that Appellant came up behind her, grabbed her around the throat with one arm, held her arm with his other hand, and told her that she needed to watch this because "Chris needs to be taught a lesson." Bomar testified that Appellant told him that he was in jail for beating up and stabbing someone. Appellant said that he had been partying one night, became pretty drunk, took some pills, went to the country, and got into a fight with Easley. Appellant beat up Easley, stabbed him multiple times, and dragged Easley's body

2

away. Appellant also told Bomar that Bostic began retaliating and so Appellant tried to break her neck and stabbed her as well. Bomar summed up his testimony by saying, "[H]e just said he was in here for stabbing Chris and beating him up and trying to drag him off and that Anne tried to get in the way and he tried to kill her, too."

We hold that this evidence was sufficient to support Appellant's conviction for murder under the law of parties. *See* TEX. PENAL CODE ANN. § 7.01 (West 2011). A person is criminally responsible for an offense committed by the conduct of another if, with the intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). Although Appellant denied that he participated in the murder beyond being forced to drag Easley's body away, the jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. TEX. CODE. CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was entitled to accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). In addition, the jury was entitled to draw reasonable inferences from the evidence. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Here, the jury could have inferred that Appellant assisted Lee in the commission of the offense by holding Bostic or by stabbing Easley himself. We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant committed the offense of murder under the law of parties. *See id.*

Appellant's motion for rehearing is denied, and our opinion dated May 30, 2014, stands.

JIM R. WRIGHT

CHIEF JUSTICE

September 30, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.