# 152·15

NO. _____

ORIGINAL

### IN THE
### COURT OF CRIMINAL APPEALS
### OF TEXAS

Ford,

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 23 2015

Abel Acosta, Clerk

Erick Eugene,

Appellant/Petitioner

VS.

**THE STATE OF TEXAS,**

Appellee/Respondent

---

---

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

---

In Appeal No. 05-13-01482-CR
from the
**Court of Appeals
for the Fifth Judicial District
Dallas, Texas**

---

FILED IN
COURT OF CRIMINAL APPEALS

APR 24 2015

Abel Acosta, Clerk

**Appellant's Name and Address**

**Appellant**

Erick Eugene Ford

**Attorneys for Appellant**

Christian T. Souza
SBN: 00785414
4303 N. Central Expressway
Dallas, Texas 75205
(on appeal)

Deke Austin
Dallas, Texas
(at trial)

**Prosecutors**

Andrew Novak
Ryan Searcey
Assistant District Attorneys
(at trial)

Craig Watkins
(on appeal)

Dallas County District Attorney's Office
133 N. Riverfront Blvd.
Dallas, Texas 75219

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................4

STATEMENT OF THE CASE..........................................................7

ISSUES PRESENTED........................................................................8

STATEMENT OF FACTS..................................................................8

SUMMARY OF ARGUMENT.........................................................11

ARGUMENT.......................................................................................12

      **Point of Error One**...............................................................12

The evidence was insufficient to establish heroin quantity because there was no evidence to show that the weight of the capsules that contained the heroin did not exceed 0.2 grams.

      **Point of Error Two**...............................................................12

The evidence was insufficient to show that the trafficking weight of the heroin was at least four grams.

PRAYER...............................................................................................27

CERTIFICATE OF WORD COUNT.............................................28

CERTIFICATE OF SERVICE.........................................................28

# INDEX OF AUTHORITIES

## <u>CASES</u>

*Boone v. State,*
No. 02-13-00334-CR, 2014 Tex. App. LEXIS 2916
(Tex.App.—Fort Worth March 13, 2014, no pet. his)
(not designated for publication)................................................19

*Brooks v. State,*
323 S.W.3d 893 (Tex.Crim.App. 2010)...........................................17

*Carter v. State,*
No. 05-96-00692-CR, 1998 Tex. App. LEXIS
(Tex.App.—Dallas Feb. 3, 2008)................................................19

*Clayton v. State,*
235 S.W.3d 772 (Tex.Crim.App. 2007).............................20-21, 26

*Gabriel v. State,*
842 S.W.2d 328 (Tex.App.—Dallas 1992),
aff'd 900 S.W.2d 721 (Tex. Crim. App. 1995).....................22-25

*Greenwade v. Florida,*
124 So.3d 215 (Fla. 2013)........................................................24

*Guia v. State,*
220 S.W.3d 197 (Tex.App.—Dallas 2007 pet. ref'd)...............23-24

*Hardy v. State,*
281 S.W.3d 414 (Tex.Crim.App. 2009).........................................17

*Ivie v. State,*
407 S.W.3d 305 (Tex.App.—Eastland 2013, pet. ref'd)..................19

*Jackson v. Virginia,*
443 U.S. 307 (1979).................................................................17

*May v. State,*
 No. 05-93-00773-CR, 1994 Tex.App. LEXIS 3869
 (Tex.App.—Dallas 1994, no pet.)
 (not designated for publication)..............................................19

*People v. Hill,*
 524 N.E.2d 604 (Ill. App. Ct. 1998)..................................24

*Ross v. State,*
 528 So.2d 1237 (Fla. Dist. Ct. App.),
 *review denied,* 537 So.2d 569 (Fla. 1988).......................24

*Santibanez v. State,*
 686 S.E.2d 884, 301 Ga. App. 121 (2009)......................25

*Sorrells v. State,*
 343 S.W.3d 152 (Tex.Crim.App. 2011)...............17, 20-21, 26

*Thornton v. State,*
 425 S.W.3d 289 (Tex.Crim.App. 2014)............... 17-18, 26

*Thorpe v. State,*
 831 S.W.2d 548 (Tex. App.—Austin 1992, no pet.)...............22

*Tibbs v. Florida,*
 457 U.S. 31 (1982).................................................17

*Williams v. State,*
 235 S.W.3d 742 (Tex.Crim.App. 2007)............... 20-21, 26

## STATUTES

TEX. HEALTH & SAFETY CODE § 481.002(5)...........................................18

TEX. HEALTH & SAFETY CODE § 481.002(17)......................................20

TEX. HEALTH & SAFETY CODE § 481.102...................................7, 15, 18

TEX. HEALTH & SAFETY CODE § 481.112..........................7, 15, 18, 24, 26

TEX. PENAL CODE § 12.32.................................................7, 15, 18

TEX. PENAL CODE § 12.42.................................................7, 15, 18

## SECONDARY

Drug Enforcement Administration Drug Fact Sheet, Heroin, at
http://www.justice.gov/dea/druginfo/drug_data_sheets/Heroin.pdf.........13

Black Tar Heroin, from Wikipedia,
http://en.wikipedia.org/wiki/Black_tar_heroin (last visited June 11, 2014)..13

TO THE HONORABLE COURT OF APPEALS:

COMES NOW Appellant Erick Eugene Ford and submits this brief on appeal from a conviction for possession of four grams or more but less than 200 grams of heroin with intent to distribute in the 195th Judicial District Court of Dallas County, Texas, the Honorable Pat McDowell,[1] Judge presiding.

## STATEMENT OF THE CASE

Appellant was indicted for possession of four grams or more but less than 200 grams of heroin with intent to distribute, a first-degree felony, which is ordinarily punishable by confinement in the Institutional Division of the Texas Department of Criminal Justice for 5 to 99 years or life, with a fine not to exceed $10,000. (CR: 14). TEX. HEALTH & SAFETY CODE §§ 481.102, 481.112(a), 481.112(d); TEX. PENAL CODE § 12.32. The State alleged that Appellant committed the instant offense on May 17, 2013. (CR: 14). The State alleged that Appellant was convicted of a prior felony on January 27, 1998, which would elevate the minimum term of confinement to 15 years. (CR: 14, 26). TEX. PENAL CODE § 12.42(c)(1). Appellant pleaded not guilty, but a jury convicted him of the alleged offense. (CR: 49-50; RR4: 7; RR5: 27). Appellant pleaded true to the enhancement allegation, and the trial court set

---

[1] The regular judge of the 195th Judicial District Court is the Honorable Fred Tinsley.

his sentence on August 29, 2013 at 20 years' confinement in the Institutional Division. (CR: 34, 50; RR5: 29-33). On August 29, 2013, Appellant filed a Motion for New Trial, which the trial court denied. (CR: 53). Appellant filed his Notice of Appeal on August 29, 2013. (CR: 54).

## ISSUES PRESENTED

### Point of Error One

**The evidence was insufficient to establish heroin quantity because there was no evidence to show that the weight of the capsules that contained the heroin did not exceed 0.2 grams.**

### Point of Error Two

**The evidence was insufficient to show that the trafficking weight of the heroin was at least four grams.**

## STATEMENT OF FACTS

Dallas Police Department Detective Julio Ortiz told the jury that the Dallas Police Department was concerned about a small duplex located at 4012 Colonial Drive in Dallas, because it was a "trap house" that was situated in an area where addicts knew they could buy heroin. (RR4: 8-12, 17-18, 20, 22, 25, 37, 114, 157, 165, 170-71; SX-11, SX-13, SX-69-71). Appellant was present inside the Colonial Drive duplex when a search warrant was executed on October 11, 2012; some ecstasy tablets were found, but nobody was arrested. (RR4: 147-49, 152). On January 4, 2013, Appellant told an undercover officer, who was posing as a crack customer, that the supply was depleted at the

Colonial Drive duplex. (RR4: 143). Appellant and three other men were arrested inside of the duplex at about 6:00 a.m. on May 17, 2013. (RR4: 8-12, 14, 16-18, 20, 22, 25, 31, 33, 37, 64, 114; SX-2, SX-11, SX-78-80). A warrant was executed at another address in the area on the same day in a "related" case. (RR4: 77, 147, 150).

The May 17, 2013 Colonial Drive warrant execution team was hampered by a metal "cage" that protected the front door of the duplex. (RR4: 25, 114, 127). During the moment that it took to pry the metal open, the officers could hear people running inside. (RR4: 25, 114, 127).

When the officers finally entered the duplex, Appellant was exiting the bathroom, and the other three men were lying on the floor in the front room. (RR4: 24, 26-27, 40-41, 48-49, 107, 109, 130; SX-2). One of the men on the floor, Jerel Otaru, told the jury that Appellant apparently flushed "his bag" down the commode when he realized that the police were entering the duplex. (RR4: 25, 40-41, 48-49, 114, 117, 120, 126-27, 130-31, 133-36).

Detective Ortiz found Dormin sleep-aid capsules in the toilet. (RR4: 29-30, 37, 50, 54-55, 72; SX-29-30, SX-43, SX-45). The Dormin capsules contained a powdery substance that was heroin, according to Detective Ortiz's experience, as confirmed by field tests. (RR4: 28-29, 37, 43, 52-53, 56, 78-79; SX-29-30). Detective Ortiz noted that Dormin capsules were commonly used

to sell heroin, because 1) capsules would contain powder better than plastic bags, 2) Dormin was a cutting agent for heroin, and 3) a capsule could be used to measure quantity. (RR4: 53-54, 56-57). A Dormin bottle with capsules that did not contain heroin was located on the floor or couch in the front room. (RR4: 37, 50, 54, 56; SX-21, SX-38).

The officers also recovered substances that they believed were heroin from Derek Rayford, one of the men lying on the floor. (RR4: 37, 40-41, 48-49, 55, 64, 75, 89-90, 98; SX-43-45, SX-48; SX-77, SX-83-84). The officers obtained two sizes of capsules from Rayford. (RR4: 37, 40-41, 48-49, 55, 64, 75, 89-90, 98; SX-43-45, SX-48; SX-77, SX-83-84).

According to Otaru, Rayford and Appellant were jointly responsible for operating the Colonial Drive trap house. (RR4: 124, 128-29, 133, 167-68). Otaru told the jury that Rayford and Appellant gave him small amounts of heroin in exchange for him running errands to purchase food and other items. (RR4: 124, 128-29, 133, 167-68).

In addition to the drug evidence, the search yielded 1) about $350.00 in cash —$200.00 was recovered from Rayford and $155.00 was scattered around the front room— (RR4: 37, 65, 74; SX-18, SX-24, SX-51-52); 2) a pocketknife that was located on a table in the front room, with a capsule stuck to it (RR4:

37, 53, 55-56; SX-20); 3) 0.1 grams of cocaine (RR4: 37, 59, 64, 75; SX-43); and 4) 18 unknown capsules. (RR4: 64).

## SUMMARY OF ARGUMENT

The evidence was insufficient to show that Appellant was involved in trafficking at least 4.0 grams of heroin. The State sought to establish quantity based of 35 packaging capsules and their contents. Ten of the capsules turned into a 2.04-gram jelly-like mass, due to absorption of fluid(s) from a commode, although there were indications that their pre-moisturized trafficking weight was 0.9 grams. There was no evidence to show that the collective weight of the 35 capsules themselves, which were not made of heroin, was not more than 0.2 grams, even though the total quantity that was claimed was 4.02 grams. There were dry capsules that were not weighed, but the chemist could not say that they contained heroin, because their powdery contents were not tested, or even viewed; they were not all the same size; and there were indications that the powder in those capsules could have been cocaine.

# ARGUMENT

## Point of Error One

**The evidence was insufficient to establish heroin quantity because there was no evidence to show that the weight of the capsules that contained the heroin did not exceed 0.2 grams.**

## Point of Error Two

**The evidence was insufficient to show that the trafficking weight of the heroin was at least four grams.**

Point of Error Number One demonstrates that the evidence was insufficient to establish the requisite heroin quantity, four grams, because there was no evidence that the weight of the 35 capsules that contained the heroin did not exceed 0.2 grams, when the claimed total was 4.2 grams. Point of Error Number Two demonstrates that, even if the capsules weighed less than 0.2 grams, there was no rationale basis for concluding that the heroin weighed at least four grams, when the indications were that the pre-moisturized trafficking weight of the jelly-like portion was 0.9 grams, and moreover, the State's witness were uncertain about combined total weight in question. Points of Error One and Two are presented together because they involve a common nexus of fact and law.

# I. Additional Facts

## A. Substances

### 1. Jelly-like Mass

The testimony indicated that Appellant flushed something down the commode when it became apparent that officers were entering the Colonial Drive duplex on May 17, 2013. (RR4: 19, 22, 24-27, 40-41, 48-49, 107, 109, 114, 117, 120, 126-27, 130-31, 133-36). Dallas Police Department Detective Julio Ortiz found $10^2$ capsules in the commode that he believed contained heroin. (RR4: 29-30, 42, 171; SX-27-30). Detective Ortiz photographed those capsules prior to removing them from the commode. (RR4: 28-32, 37, 42, 52-53; SX-27-30). After the capsules were removed from the commode, they began to stick together, and they soon formed a brown or black jelly-like mass.[3] (RR4: 28-32, 37, 42, 52-53, 55, 58-59; SX-27-30).

Sarah Muhlberger, a chemist at the Southwestern Institute of Forensic Sciences, analyzed the jelly-like mass on June 3, 2013. (RR4: 55, 58-59, 93;

---

[2] Detective Ortiz testified "[h]ow many caps I don't remember. Ten." (RR4: 42).

[3] The State and its witnesses sometimes referred to the mass as if it were "black tar heroin." (RR5: 75-76, 93, 167). *See* Drug Enforcement Administration Drug Fact Sheet, Heroin, at http://www.justice.gov/dea/druginfo/drug_data_sheets/Heroin.pdf. True black tar heroin is a substitute for true heroin. *See* Black Tar Heroin, from Wikipedia, http://en.wikipedia.org/wiki/Black_tar_heroin (last visited June 11, 2014).

SX-83-84; APX).[4]  Muhlberger did not notice any pieces of the capsules that were mixed into the jelly-like substance.  (RR4: 98, 171; SX-29-30, SX-48; APX).

## 2. Powder

The photographs in State's Exhibits Numbers 43[5] through 52 showed four drug items that were seized during the search at the Colonial Drive duplex: 1) a plastic wrapper that contained a jelly-like substance, 2) a plastic bag with 92 small capsules that contained brown powder, 3) a plastic bag with 12 to 18 larger capsules that contained powder, and 4) 0.2 grams of a white substance (cocaine).  (RR4: 31-32, 35-37, 48, 55, 62; SX-43-45, SX-47-50, SX-83-84; APX).  Detective Ortiz indicated that "this" evidence and "these" capsules were taken directly from Derrick Rayford, i.e., the capsules with the powder were recovered from Rayford's pocket(s).  (RR4: 51-52, 54-55, 61; SX-43, SX-77).

## B.  Weight

The State relied on the weight of the jelly-like substance and on the 92 small capsules of brown powder to show that Appellant possessed at least four

---

[4] "APX" indicates reference to the laboratory report, as shown in the Appendix to this Brief for Appellant.

[5] When the State offered "State's 10 through 68," Appellant objected to Exhibits 44 through 53. (RR4: 31-33; SX-44-53). The trial court admitted "44 through 53," and it later indicated that Exhibit Number 43 had been admitted without objection. (RR4: 37-38, 62; SX-43-53).

grams of heroin.[6] (RR4: 36, 61, 64, 87-89; SX-77, SX-83). Field tests indicated that heroin was present in the jelly-like substance and in the brown powder from the capsules. (RR4: 58-59; SX-43-45, SX-48-50). The jelly-like substance and the capsules were included together in a package that was forwarded to the laboratory under Evidence Tag Number 062761D.[7] (RR4: 36, 62, 88-90; SX-43, SX-45, SX-50, SX-77, SX-83). The laboratory determined that the jelly-like material and brown powder each included heroin. (RR4: 90; SX-83).

Detective Ortiz testified that the jelly-like substance together with the 92 capsules and their contents collectively weighed 10.9, 14.0 or 14.2 grams. (RR4: 64, 75-76). The jelly-like substance specifically weighed either 3.1 or 3.3 grams, according to Detective Ortiz's testimony, or 4.3 grams, according to a photograph that was taken by an unspecified investigator at an unspecified time. (RR4: 37, 62, 75-76; SX-43, SX-45, SX-48, SX-50). The 92 capsules and their contents weighed 13.4 grams, according to a photograph that was taken by an unspecified investigator, at an unspecified time, although an unspecified person might have determined that the 92 capsules weighed 10.9 grams,

---

[6] Possession of at least four grams of heroin with intent to distribute was a first-degree felony that subjected Appellant to a range of confinement of 15-99 years after enhancement for a prior conviction. (CR: 14, 26, 29-33, 34, 49-50; RR4: 7; RR5: 27). TEX. HEALTH & SAFETY CODE §§ 481.102, 481.112(a), 481.112(d); TEX. PENAL CODE §§ 12.32, 12.42(c)(1).

[7] Sarah Muhlberger, the chemist who performed the drug analysis, referenced the evidence tag as "62761B" in her testimony (RR4: 90) and as "062761D" in her written report. (RR4: 90; SX-83).

because 10.9 plus 3.1 grams of jelly-like substance would total 14 grams. (RR4: 51-52, 76; SX-43-45, SX-49, SX-51).

Sarah Muhlberger, the drug chemist, testified that the jelly-like substance weighed 2.04 grams on June 3, 2013. (RR4: 88-90; SX-77, 83-84; APX). Muhlberger took samples of the powder from 25 of the capsules, and those capsules and their contents weighed 2.25 grams. (RR4: 75-76, 91, 94-95).

Muhlberger did not test the powder from 67 of the capsules. (RR4: 95-96). Muhlberger testified that the powder in the un-tested brown capsules could not be identified even though the powder appeared to be "consistent" with heroin. (RR4: 95-96, 98).

Mulberger testified that the total weight was expressed in two decimal places in order to assure accuracy, *e.g.*, 1.00. (RR4: 100). Mulberger indicated that the jelly-like substance weighed 2.04 grams and that the relevant capsules weighed 2.04 grams. (SX-83). When Mulberger stated that the total weight of the material that contained heroin was 4.2 grams, she dropped another decimal. (RR4: 91, 95, 100; SX-43).

## II. Standard of Review

In reviewing the legal sufficiency of the evidence, an appellate court determines whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the

offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hardy v. State*, 281 S.W.3d 414, 421 (Tex.Crim.App. 2009); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010). This Court must defer to the jury's assessment of the credibility of the witnesses and the weight to be given their testimony, *Brooks*, 323 S.W.3d at 899, and this Court must allow for reasonable inferences from the evidence presented. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007). This Court determines whether the inferences supporting the verdict are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex.Crim.App. 2011). Whether the evidence was direct or circumstantial, the ultimate question on sufficiency review is whether the evidence presented actually supports a conclusion that the defendant committed the crime that was charged. *Williams*, 235 S.W.3d at 750, 778.

## III. Remedy

When the evidence is legally insufficient, this Court must reverse the trial court's judgment and order an acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982); *Brooks*, 323 S.W.3d at 904. In a controlled substance case, reforming the judgment to reflect a conviction on a lesser-included quantity can be appropriate, with remand for a new punishment hearing. *Thornton v. State*, 425

17

S.W.3d 289, 307 (Tex.Crim.App. 2014); *Thornton*, 425 S.W.3d at 318 n.3 (Alcala, J., dissenting).

## IV. Argument

To obtain Appellant's first-degree conviction for possessing heroin with intent to deliver, the State was required to prove beyond a reasonable doubt that: Appellant exercised care, custody, control, or management over four or more but less than 200 grams of heroin; he intended to deliver it to another; and he knew that it was a controlled substance. TEX. HEALTH & SAFETY CODE §§ 481.102, 481.112(a), 481.112(d); TEX. PENAL CODE §§ 12.32, 12.42(c)(1).

### A. Weight of the Capsules (Point of Error Number One)

#### 1. Capsules as Containers

The weight of a controlled substance includes the weight of the "mixture" of the relevant drug plus any adulterant or dilutant. TEX. HEALTH & SAFETY CODE § 481.002(5). An adulterant or dilutant is defined as any material that increases the bulk or quantity of the controlled substance, regardless of its effect on the chemical activity of the controlled substance. TEX. HEALTH & SAFETY CODE § 481.002(49).

Since heroin capsules (and balloons) do not mix with the controlled substance, such materials cannot be counted in determining its weight. *See, e.g., Ivie v. State*, 407 S.W.3d 305, 315 (Tex.App.—Eastland 2013, pet. ref'd)

(affirming the trial court's refusal to appoint a defense expert after it allowed the State to re-open to show that the chemist "weighed only the heroin contained inside the capsules"); *Boone v. State*, No. 02-13-00334-CR, 2014 Tex. App. LEXIS 2916 **15-16 & 16 n.11 (Tex.App.—Fort Worth March 13, 2014, no pet. his) (not designated for publication) (noting that the State established the "net weight" of the heroin by removing it from the capsules); *Carter v. State*, No. 05-96-00692-CR, 1998 Tex. App. LEXIS **9-10 (Tex.App.—Dallas Feb. 3, 2008) (not designated for publication) (finding that the evidence was sufficient to show quantity when the chemist showed that the powder inside of the capsules weighed 6.5 grams); *May v. State*, No. 05-93-00773-CR, 1994 Tex.App. LEXIS 3869 *4 (Tex.App.—Dallas 1994, no pet.) (not designated for publication) (noting that the chemist obtained a total weight for the brown powder that was inside of the capsules). Materials that are used for "packaging, repackaging, storing, containing, or concealing a controlled substance" are designated as "paraphernalia" under the Health and Safety Code. TEX. HEALTH & SAFETY CODE § 481.002(17).

In Appellant's case, the laboratory counted the weight of 35 capsules in reaching the total controlled substance weight of 4.2 grams. Specifically, the laboratory included the weight of the remnants of the 10 capsules that were recovered from the commode, together with the weight of 25 capsules that

were used to package the powder cocaine. (RR4: 75-76, 88-91, 94-95, 98; SX-29-30; SX-48, SX-77, SX-83-84; APX).

Since there was no testimony that the capsules in Appellant's case were made from heroin, and since the weight of the 35 capsules in question was not specified in the evidence, the jury could not make any rationale determination that the capsules weighed no more than 0.2 grams. *Sorrells*, 343 S.W.3d at 155; *Clayton*, 235 S.W.3d at 778; *Williams*, 235 S.W.3d at 750. Since 0.2 grams was close to the threshold, the absence of certainty concerning the weight of the capsules precluded any reasonable inference that the evidence was sufficient to show that Appellant possessed at least 4.0 grams of heroin. *Sorrells*, 343 S.W.3d at 155. The evidence was insufficient to show that the capsules did not weigh more than 0.2 grams, even if the weight of the capsules from the commode were not counted, because more than twice as many capsules contained the dry powder heroin. *Sorrells*, 343 S.W.3d at 155; *Clayton*, 235 S.W.3d at 778; *Williams*, 235 S.W.3d at 750.

### 2. Untested Contents

In Appellant's case, the contents of the 95 untested capsules should not be inferred from the contents of the 25 tested capsules:

- There were two types of capsules containing untested material: the 67 untested capsules, which were the same size as the 25 tested capsules, and the 18 larger untested capsules.

- The chemist did not express any conclusion identifying the contents of the 67 capsules that were the same size as the 25 tested capsules. The chemist did not test or express any opinion concerning the contents of the 18 larger capsules. None of the material could be specifically identified on the basis of visual observation. (RR4: 95-96, 98).

- The characteristics of the capsules from the commode were not specifically compared to other capsules. (SX-29-30).

- The appearance of the material in the untested capsules was powdery, not rocky. It could have been cocaine, since cocaine was seized from Rayford. It could have been ecstasy, or crack cocaine, which were sold at the duplex. (RR4: 143, 147-49, 152).

- The powdery substance was dissimilar to pills, which can be compared in numerous ways.

The concurring opinion in *Gabriel v. State* in the Court of Criminal Appeals stated:

> [A] sample taken from only one of multiple receptacles will not support the inference that all of the receptacles contain that same substance, even if the substances in all the receptacles appear to be the same, if other substances resemble the sampled substance. Because any of a number of substances look like powdered cocaine or heroin, the inference that the whole, or a requisite amount, is the same as a sample taken from fewer than all of the receptacles, or at least enough receptacles to show the requisite amount, is not compelling enough to justify a jury finding to a level of confidence beyond a reasonable doubt.

*Gabriel v. State*, 900 S.W.2d 721, 726 (Tex. Crim. App. 1995) (Clinton, J., concurring); *see also Thorpe v. State*, 831 S.W.2d 548, 549-50 (Tex. App.—

Austin 1992, no pet.) (holding that the solid granular substance that was found in 10 Baggies was no evidence of the contents of 91 other Baggies containing a similar solid granular substance). In *Guia v. State*, this Court agreed:

> Because of the likeness of powdery controlled substances to non-controlled substances, random sampling alone of powdery substances contained in separate receptacles is not sufficient to prove the whole is the same as each of the sample tested unless the weight of the random sample meets the requisite amount.

*Guia v. State*, 220 S.W.3d 197, 203 (Tex.App.—Dallas 2007 pet. ref'd). This Court affirmed the conviction in *Guia*, since the drug quantity was based on composite testing of samples from each bag in question. *Id.* Moreover, the chemist had "no doubt" that the substance in each bag was cocaine. *Id.*

This Court held in *Gabriel* that the jury had a rationale basis for determining that a quantity of untested rock-like material was cocaine, because an expert "concluded" that the untested powder shared important characteristics —color, texture and packaging— with the known quantity of cocaine. *Gabriel v. State*, 842 S.W.2d 328, 330, 332 (Tex.App.—Dallas 1992), *aff'd Gabriel*, 900 S.W.2d at 721-22 (plurality opinion); *compare Gabriel*, 842 S.W.2d at 722 (Clinton, J., concurring) (Judge Clinton stating that he is "far less certain" that a rational jury could infer from the appearance of untested rocks that they contained cocaine); *Gabriel*, 842 S.W.2d. at 333-34 (Kaplin, J., dissenting) (questioning the majority's reliance on cases involving tablets,

which have numerous comparison characteristics, including thickness, hardness, shape, color, scoring, and identifying markings).

The dissent in *Gabriel* in the Court of Criminal Appeals noted that the circumstantial evidence was highly probative of the defendant's intent, but the dissent would hold that the evidence did not raise a rationale inference to concurrently prove the identity of the "qualitatively distinct" substance. *Gabriel*, 842 S.W.2d at 726. As the dissent in *Gabriel* in this Court observed, the Illinois and Florida authorities that were relied on by the majority indicated that untested powdery contents should not be considered "in determining the severity of the offense." *Gabriel*, 842 S.W.2d at 333 (Kaplin, J., dissenting); *People v. Hill*, 169 Ill. App. 3d 901, 524 N.E.2d 604, 611-12, 120 Ill. Dec. 574 (Ill. App. Ct.), *appeal denied*, 530 N.E.2d 256 (Ill. 1988); *Ross v. State*, 528 So.2d 1237, 1239-41 (Fla. Dist. Ct. App.), *review denied*, 537 So.2d 569 (Fla. 1988); *see also Greenwade v. Florida*, 124 So.3d 215, 222 (Fla. 2013) (noting that the principles of *Ross* apply in powder heroin cases). Some contraband looks the same as legitimate substances, and similar packaging provides no assurance that the contents of those packages will be the same. *Gabriel*, 842 S.W.2d at 333 (Kaplin, J., dissenting).

### 3. Conclusion

For the reasons shown, this Court should sustain Point of Error Number One, reverse the conviction, and render judgment of acquittal. This Court should render judgment of acquittal, since Appellant was effectively convicted of two lesser offenses: he was a principal actor with respect to the heroin from the commode, and he acted as a party with respect to the dry capsules that were taken from Rayford. In the alternative, this Court should reverse the sentence and remand for new proceedings on punishment for the offense of possessing one to four grams of heroin with intent to distribute, a second-degree felony. TEX. HEALTH & SAFETY CODE § 481.112(c); *Thornton*, 425 S.W.3d at 307; *Id.* at 318 n.3 (Alcala, J., dissenting).

## B. Trafficking Weight (Point of Error Two)

### 1. Heroin in Pre-Moisturized Capsules

There was no direct evidence concerning the trafficking weight of the 10 capsules that turned into the jelly-like mass. The direct evidence only indicated that the weight of the jelly-like substance from the commode declined from 3.1 or 3.3 grams, according to the police investigation, to 2.04 grams, after it dried somewhat between May 17, 2013 and June 3, 2013. (RR4: 37, 62, 75-76, 88-90; SX-43, SX-45, SX-48, SX-50, SX83-84; APX). To compare, in *Santibanez v. State*, the Court held that the trafficking weight was shown even though it

consisted mostly of the weight of methamphetamine that was recovered from inside a commode, because the chemist testified that it was not unusual for methamphetamine to be somewhat moist, and because the chemist also stated that the methamphetamine would not have absorbed water. *Santibanez v. State*, 686 S.E.2d 884, 890, 301 Ga. App. 121, 129 (2009).

In Appellant's case, the indirect evidence indicated that the 10 capsules and their contents collectively weighed only 0.9 grams. The chemist testified that the 25 tested capsules collectively weighed 2.25 grams, *i.e.*, they weighed 0.09 grams each. Consequently, the 10 pre-moisturized capsules and their contents would have collectively weighed 0.9 grams (0.09 X 10), which meant that the trafficking weight of the entire quantity of heroin was 3.15 grams (0.9 for 10 capsules + 2.25 for 25 capsules), not 4.2 grams. The evidence was insufficient to sustain the 4.0-gram quantity determination, since no rationale inferences were available to support that determination. *Sorrells*, 343 S.W.3d at 155; *Clayton*, 235 S.W.3d at 778; *Williams*, 235 S.W.3d at 750.

## 2. Uncertain Weight for Powder in Dry Capsules

In addition, the weight of the 25 dry capsules, as reported by the laboratory, was not rationally entitled to any weight, since the weight of the contents of the dry capsules was not clearly established during the police investigation. The indications from the law enforcement testimony were that

the 95 dry capsules and their contents weighed either 13.4 grams or 10.9 grams. (RR4: 51-52, 64, 75-76; SX-43-45, SX-49, SX-51). *Sorrells*, 343 S.W.3d at 155; *Clayton*, 235 S.W.3d at 778; *Williams*, 235 S.W.3d at 750.

### 3. Conclusion

For the reasons shown, this Court should sustain Point of Error Number Two, reverse the conviction, and render judgment of acquittal. *Sorrells*, 343 S.W.3d at 155; *Clayton*, 235 S.W.3d at 778; *Williams*, 235 S.W.3d at 750. This Court should render judgment of acquittal, since Appellant was effectively convicted of two offenses involving less than four grams each: Appellant possessed the capsules from the commode by himself, and Rayford and Appellant jointly possessed the capsules that were taken from Rayford. In the alternative, this Court should reverse the sentence and remand for new proceedings on punishment for the offense of possessing one to four grams of heroin with intent to distribute, a second-degree felony. TEX. HEALTH & SAFETY CODE § 481.112(c); *Thornton*, 425 S.W.3d at 307; *Id.* at 318 n.3 (Alcala, J., dissenting).

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellant prays for this Court to sustain Points of Error One and Two, reverse his conviction, and render judgment of acquittal, or remand for new trial on punishment. Appellant prays for any other relief to which he may be justly entitled.

Respectfully submitted,

/s/ Christian T. Souza

**Christian T. Souza**
SBN: 00785414
4303 N. Central Expressway
Dallas, Texas 75205
Tel. (214) 862-7462
Fax (214) 696-0867

Erich E. Ford #1880501
815 12th St. Huntsville, Tx. 77348

27

No. 05-13-01482-CR

**ERICK EUGENE FORD**,
Appellant

**v.**

**THE STATE OF TEXAS**,
Appellee

## APPENDIX

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..............................................................

STATEMENT REGARDING ORAL ARGUMENT ..............................................

STATEMENT OF THE CASE .............................................................

STATEMENT OF PROCEDURAL HISTORY ...............................................

GROUNDS FOR REVIEW ...............................................................

      GROUND FOR REVIEW NO. ONE
      [Set out the Ground or Question Presented for Review]

      GROUND FOR REVIEW NO. TWO
      [Set out the Ground or Question Presented for Review]

ARGUMENT NUMBER ONE .............................................................

ARGUMENT NUMBER TWO .............................................................

PRAYER FOR RELIEF .................................................................

CERTIFICATE OF SERVICE ...........................................................

APPENDIX [Opinion] ................................................................
      [A copy of the Court Opinion must be attached to the Petition]

## INDEX OF AUTHORITIES

<u>CASES</u>:

See Offenders
   Appellant's Petition For Discretionary Review
Index of Authorities page 4

NO. _____

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS
Ford,

Erick Eugene,
                                    Appellant/Petitioner

VS.

THE STATE OF TEXAS,
                            Appellee/Respondent

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Appellant/Petitioner respectfully submits this Petition for Discretionary

Review and moves that this Honorable Court grant review of this cause and offers

the following in support thereof:

**STATEMENT REGARDING ORAL ARGUMENT**

The Appellant/Petitioner requests oral argument in this case because such

argument may assist the Court in applying the facts to the issues raised. It is

suggested that oral argument may help simplify the facts and clarify the issues.

1

## STATEMENT OF THE CASE

[Briefly state the nature of the case. This statement should seldom exceed half a

page. See Rule 68.4(d), Texas Rules of Appellate Procedure.]

See offender's
Appellant's Petition for Discretionary Review
Pages: 7, 8

## STATEMENT OF PROCEDURAL HISTORY

[Statement of the history of the case. See Rule 68.4(e), Texas Rules of

Appellate Procedure, for the dates that must be included in this portion of the

Petition, including the filing and overruling of any motion for rehearing, if any.]

In Cause No. F-1355893-N the Appellant/Petitioner was charged with

the offense of Possession w/ the intent to deliver. The Appellant/Petitioner was convicted

of such offense on May 17, 2013 and appealed the conviction.

On Jan. 26 2015 the Dallas Court of Appeals affirmed the conviction. No motion

for rehearing was filed. On 15th of April 2015 this Petition for Discretionary Review

was timely forwarded to the Court of Appeals for filing pursuant to Rule 9.2(b),

Texas Rules of Appellate Procedure.

# GROUNDS FOR REVIEW

## I.

[State briefly, without argument, the grounds or questions on which the Petition are

based. See Rule 68.4(f), Texas Rules of Appellate Procedure.]

Whether the evidence was insufficent to establish heroin quantity because there was no evidence to show that the weight of the capsules that contained the heroin did not exceed 0.2 grams.

## II.

[Same format as above]

Whether the evidence was insufficient to show that the trafficking weight of the heroin was at least four grams.

[More than two Grounds for Review, along with accompanying Arguments, can be raised in a Petition, but the Petition cannot exceed 15 pages, exclusive of certain pages. See Rule 68.5, Texas Rules of Appellate Procedure.]

## ARGUMENT NUMBER ONE

[Rule 68.4(g), Texas Rules of Appellate Procedure, states: "The petition must

contain a direct and concise argument, with supporting authorities, amplifying the

reasons for granting review.  See Rule 66.3."

See Offender's
    Appellant's Petition For Discretionary Review

Page: 12

4

## ARGUMENT NUMBER TWO

[Same format as above.]

See Offender's
   Appellant's Petition For Discretionary
Review
    Page: 24

## PRAYER FOR RELIEF

For the reasons stated above, it is respectfully submitted that the Court of Criminal Appeals of Texas should grant this Petition for Discretionary Review.

Respectfully submitted, Erick E. Ford #1880501
Huntsville Unit
815 12th St. Huntsville Tx. 77348
**APPELLANT'S NAME & ADDRESS**

## CERTIFICATE OF SERVICE

The undersigned Appellant/Petitioner hereby certifies that a true and correct copy of the foregoing Petition for Discretionary Review has been mailed, U.S. mail, postage prepaid, to the Office of the Criminal District Attorney for Dallas County, Frank Crowley Courts Bldg., 133 N. Industrial Blvd., LB-19, Dallas, TX 75207, and to the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, on this the _15th_ day of _April_, 20~~07~~. ~~20005~~ 2015

Erick Ford #1880501
**APPELLANT/PETITIONER**

6



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01482-CR

**ERICK EUGENE FORD, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

On Appeal from the 195th Judicial District Court
Dallas County, Texas
Trial Court Cause No. F-1355893-N

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Francis

A jury convicted Erick Eugene Ford of possession with intent to deliver four grams or more but less than 200 grams of heroin, and the trial court assessed punishment, enhanced by a prior conviction, at twenty years in prison. In two issues, appellant challenges the sufficiency of the evidence to support his conviction. For reasons set out below, we conclude the issues are without merit. On our own motion, we modify the trial court's judgment to make it conform to the record and affirm the judgment as modified.

Dallas police executed a search warrant at a south Dallas duplex where police suspected heroin was being sold. On arrival, the officers announced "police" and then heard "a lot of running" inside. The front door was barricaded with a cage. It took officers about one minute to pry open the cage and "slam" the front door to gain entry. Inside, three men were already lying

on the floor; a fourth man, identified as appellant, was coming out of the bathroom. After securing the house and taking the men outside, Detective Julio Ortiz went into the bathroom and saw what he believed to be about ten heroin capsules floating in the toilet. Ortiz removed the capsules and put them in a plastic bag. Police also recovered, among other things, a bottle of Dormin, which is used to "cut" heroin, cash, a pocket knife with a capsule stuck to it, and a small green baggie. They also found two baggies of pills on one of the men, Derek Rayford. One of the baggies contained ninety-two pink/clear capsules.

The officers field-tested the items they suspected to be drugs. The capsules recovered from the toilet and from Rayford tested positive for heroin, and the substance in the green baggie tested positive for cocaine. When he returned to the station, Ortiz noticed the capsules removed from the toilet had "started changing." He said they had begun to dry out, change colors, and stick together, ultimately turning into a tar-like substance. Officers weighed the drugs, and Ortiz said the total weight of the suspected heroin was 14.2 grams: 10.9 grams for the dry capsules and 3.3 grams for the tar-like substance.

The items were sent to the Southwestern Institute of Forensic Sciences lab for testing. Sarah Muhlberger, a drug chemist at SWIFS, said she received a baggie containing a "brown jelly-like material" that appeared to have "dried up." The material contained heroin and diphenhydramine and weighed 2.04 grams, including adulterants and dilutants. She did not see any pieces of capsules or "anything like that" in the material.

She also received a baggie containing ninety-two pink/clear capsules containing a brown material in powder form. Muhlberger used twenty-five of the capsules for analysis and took a sample of the brown material from each. The material contained heroin and diphenhydramine, and the total weight of the material, including adulterants and dilutants, was 2.25 grams. That material, combined with the weight of the jelly-like substance, totaled 4.2 grams, so Muhlberger

did not test the contents of the remaining sixty-seven capsules. She explained that it is SWIFS policy to analyze only enough evidence to reach a certain weight range for penalty purposes and analyzing the contents of the remaining capsules would not have reached the next penalty weight range. According to Muhlberger, the untested material inside the sixty-seven capsules was consistent with the brown powder she did analyze, and the weight was eight grams. The total weight of "everything" that was "[c]onsistent with heroin" was 12.2 grams. Muhlberger's written report, which detailed the items tested, the results, and the weight, was admitted into evidence.

Jeral Otaru, one of the men arrested during the raid, testified appellant and Rayford ran the drug house. Otaru said he purchased heroin capsules from them; the cost was $3 for one capsule or $5 for two capsules. He also ran errands for appellant and Rayford in exchange for "a caplet or two of heroin." Otaru said when the police arrived, appellant was "grabbing on his pockets, you know, reaching for his bag." Appellant ran to the back and Otaru heard "water splash," like a toilet flush.

In reviewing a challenge to the sufficiency of the evidence, we examine the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Therefore, when analyzing the sufficiency of the evidence, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* Direct and circumstantial evidence are treated equally. *Id.*

Appellant limits his sufficiency challenges to the proof of the weight of the heroin that he possessed. In his first issue, he argues the evidence failed to establish a weight of four grams or more because the chemist improperly included the weight of thirty-five capsules (the ten capsules found in the toilet water that dissolved into a jelly-like mass and the twenty-five capsules containing powder) when reaching the total controlled substance weight of 4.2 grams.

To convict in this case, the State must show the defendant knowingly possessed the controlled substance with intent to deliver. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). A controlled substance is defined as "a substance, including a drug, an adulterant, and a dilutant, listed in Schedules I through V or Penalty Groups 1, 1–A, or 2 through 4." *Id.* § 481.002(5). A controlled substance includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance. *Id.* An adulterant or dilutant means any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance. *Id.* § 481.002(49). Heroin is listed in Penalty Group 1. *Id.* § 481.102(2).

Assuming for purposes of this opinion that appellant is correct in arguing the dry capsules themselves should not be included in the total weight, the evidence does not show they were. The drug analysis test report was admitted into evidence. The report showed that "twenty-five pink/clear capsules containing brown material" were used for analysis; the "material contained heroin and diphenhydramine[,]" and the "total weight of the material, including adulterants and dilutants, was 2.25 grams." Thus, the report shows that only the "material" was weighed, not the capsules. The report was signed by Muhlberger, and nothing in her testimony at trial was inconsistent with the report.

As for the brown jelly-like material, Muhlberger testified she did not notice any pieces of capsule or "anything like that" mixed in the material. To the extent appellant suggests the State

had to extrapolate out the weight of the "pre-moisturized" capsules which had dissolved into the brown jelly-like material after appellant attempted to flush the capsules down the toilet, we disagree. Any substance that is added to or mixed with a controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant. *Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005). Detective Ortiz testified he removed the ten capsules from the toilet water and placed them in a baggie. At the police station, he noticed the capsules "started changing" and began drying out, changing colors, and getting stuck together. From this evidence the jury could have rationally concluded the capsules dissolved in the toilet water and had become mixed with the powder inside, resulting in the jelly-like substance. *See Jones v. State*, 235 S.W.3d 783, 785–86 (Tex. Crim. App. 2007) (concluding that when defendant's accomplice poured liquid methamphetamine into bottle of bleach hoping to destroy the drug during police pursuit, bleach was "added to or mixed with" the controlled substance and could be added to aggregate weight); *Seals*, 187 S.W.3d at 420 (concluding blood found mixed with methamphetamine in a vial was properly included in aggregate weight as adulterant or dilutant). We conclude the dissolved capsules became adulterants or dilutants and were properly added to the aggregate weight of the controlled substance. We overrule the first issue.

In his second issue, appellant asserts the evidence was insufficient to show the "trafficking weight" of the heroin was at least four grams. Here, he asserts the "indirect evidence" showed the ten capsules and their contents, in "pre-moisturized" form, weighed only 0.9 grams. When added to the weight of the contents of the twenty-five capsules, 2.25 grams, he asserts the "trafficking weight for the entire quantity of heroin was 3.15 grams."

It appears appellant is attempting to limit the aggregate weight of the drugs to the amount the drugs would have weighed had he not attempted to destroy them by flushing them down the

toilet. He has not cited a Texas case for his "trafficking weight" argument nor do we agree appellant benefits from his attempt to destroy evidence any more than the defendant whose accomplice attempted to do so by pouring the drugs into a bleach bottle. *See Jones*, 235 S.W.3d at 786. Having previously concluded the dissolved capsules became adulterants or dilutants and were properly added to the aggregate weight of the controlled substance, we conclude his argument is without merit.

Appellant also asserts "the weight of the 25 dry capsules, as reported by the laboratory, was not rationally entitled to any weight, since the weight of the contents of the dry capsules was not clearly established during the police investigation." He directs us to State's Exhibit 49, which shows the ninety-two capsules on a scale displaying a weight of 13.4 grams, and testimony from Ortiz that the capsules weighed 10.9 grams. It appears appellant is suggesting the inconsistent amounts determined by the police render the lab analysis incredible, although he does not explain how the police scales would affect the accuracy of the chemist's testing equipment. Muhlberger testified the lab's "balances are very specific out to the 4th decimal place of a gram." Moreover, we note State's Exhibit 49 includes the weight of the capsules, their contents, and the plastic bag in which they were contained, while the lab weighed only the material inside the capsules. We overrule the second issue.

Finally, although neither party has raised the issue, our review of the record reveals an error in the trial court's judgment. Specifically, the record reflects appellant pleaded true to an enhancement paragraph alleging a prior conviction, and the trial court accepted the plea and found the paragraph true. The judgment, however, does not reflect the correct plea or finding.

This Court has the authority to correct a judgment of the court below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). This authority is not dependent upon

a request by a party nor does it turn on the question of whether a party has objected in the trial court. *Id.* at 529–30. Accordingly, we modify the judgment to reflect a plea of true and a finding of true to the first enhancement paragraph.

We affirm the trial court's judgment as modified.

Do Not Publish
TEX. R. APP. P. 47
131482F.U05

/Molly Francis/
MOLLY FRANCIS
JUSTICE

—7—



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ERICK EUGENE FORD, Appellant

No. 05-13-01482-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1355893-N.
Opinion delivered by Justice Francis; Justices Evans and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect a Plea of True to the 1st Enhancement Paragraph and a Finding of True to 1st Enhancement Paragraph.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered January 26, 2015.